UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM MONTGOMERY, individually and on behalf of all others similarly situated, | : : : : | CIVIL NO. 3:19-cv-01182-AVC |
| Plaintiff, | : : | |
| -vs- | : : | |
| STANLEY BLACK & DECKER, INC., d/b/a CRAFTSMAN, | : : : | |
| Defendant. | : | SEPTEMBER 25, 2019 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF STANLEY BLACK & DECKER'S
MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page(s)**

Introduction ................................................................................................................. 1

Statement of Facts ....................................................................................................... 4

Legal Standard ............................................................................................................. 8

Argument ..................................................................................................................... 9

I.     Virginia Law Governs Plaintiff's Individual Claims Under Connecticut's Choice-Of-Law Rules ............................................................................................. 10

II.    All of Plaintiff's Individual Claims Fail ........................................................... 12

     A.    Plaintiff's Express and Implied Warranty Claims Fail (Counts I and II) ............ 12

          1.    Plaintiff does not (and cannot) plausibly allege SBD made a statement on the product packaging about Peak Horsepower that created an express warranty that turned out to be inaccurate .................. 12

          2.    Plaintiff's wet/dry vacuum is merchantable, and he cannot plausibly plead otherwise .......................................................... 13

     B.    Plaintiff Cannot State A Claim For Unjust Enrichment Under Virginia Law (Count III) .................................................................... 16

     C.    Plaintiff's claim for negligent misrepresentation fails (Count IV) and Plaintiff cannot state a claim for fraud (Count V) ................................. 17

     D.    Plaintiff cannot state a claim nor does he have standing to represent a class under the Connecticut Unfair Trade Practices Act (Count VI) ............................ 20

     E.    Plaintiff's claim under the Virginia Consumer Protection Act also fails (Count VII) ......................................................................... 21

     F.    Plaintiff cannot seek injunctive or declaratory relief as a matter of law (Prayer for Relief at "g") ......................................................... 22

III.    Because Plaintiff's Individual Claims Fail, He Cannot Assert Claims on Behalf of Any Proposed Class Member ......................................................... 23

CONCLUSION ......................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*,
 275 F. Supp. 3d 910 (N.D. Ill. 2017) ....................................................................12

*Adardour v. Am. Settlements Inc.*,
 No. 1:08cv798(AJT/TRJ), 2009 WL 1971458 (E.D. Va. July 2, 2009) ...........................20, 21

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
 367 F.3d 212 (4th Cir. 2004) .............................................................................7

*Anthony v. Verizon Virginia, Inc.*,
 288 Va. 20 (2014) ........................................................................................17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).....................................................................................7, 8

*Bayliner Marine Corp. v. Crow*,
 257 Va. 121 (1999) .......................................................................................14

*Bell v. Survey Sampling Int'l, LLC*,
 No. 3:15-CV-1666 (MPS), 2017 WL 1013294 (D. Conn. Mar. 15, 2017)...........................11

*Cantor Fitzgerald Inc. v. Lutnick*,
 313 F.3d 704 (2d Cir. 2002)...............................................................................9

*In re Cardiac Devices Qui Tam Litig.*,
 221 F.R.D. 318 (D. Conn. 2004)...........................................................................8

*Carlson v. Gen. Motors Corp.*,
 883 F.2d 287 (4th Cir. 1989) .............................................................................15

*Commonwealth of Va. v. Smoky Mtn. Secrets, Inc.*,
 41 Va. Cir. 564, 1997 WL 1070558 (Cir. Ct. Richmond Apr. 1, 1997) ..............................20

*Coover v. Brown*,
 No. 3:15V1866 (VLB), 2016 WL 1588490 (D. Conn. Apr. 20, 2016) ...................................1

*Cortec Inds., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991)................................................................................7

*Costello v. Larsen*,
 182 Va. 567 (1944) .....................................................................................19, 21

*DiMuro v. Estee Lauder Cos., Inc.*,
    Civil No. 3:12CV01789(AVC), 2013 WL 12080901 (D. Conn. Nov. 22,
    2013), *aff'd sub nom DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d
    Cir. July 10, 2014) ...........................................................................................8, 12, 22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)...........................................................................................17

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................................................23

*Fraiser v. Stanley Black & Decker, Inc.*,
    109 F. Supp. 3d 498 (D. Conn. 2015)........................................................................20, 22

*Goldberger v. Bear, Stearns & Co.*,
    No. 98 Civ. 8677, 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000)............................................9

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)........................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ....................................................................................22

*Jaiguay v. Vasquez*,
    287 Conn. 323 (2008) .....................................................................................................9

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)........................................................................................8, 22

*Johnson v. Shop-Vac Corporation*,
    Case No. 3:19-cv-14834-BRM-DEA (D.N.J.)...................................................................1, 5

*Laurel Gardens, LLC v. MJL Enterprises, LLC*,
    Civil No. 2:18cv210, 2018 WL 3468362 (E.D. Va. July 18, 2018) ......................................1

*Learning Works, Inc. v. The Learning Annex, Inc.*,
    830 F.2d 541 (4th Cir. 1987) ........................................................................................18

*Leonard F. v. Israel Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999)..............................................................................................7

*Lewis v. Casey*,
    518 U.S. 343 (1996)........................................................................................................22

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
    865 F. Supp. 2d 529 (D.N.J. 2011) .................................................................................15

*Lujan, v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................21, 22

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. &*
    *Sales Pr. Litig.,*
    No. 1:16MD2743, 2017 WL 2911681 (E.D. Va. July 7, 2017)................................................13

*Metro. Enter. Corp. v. United Techs. Int'l, Corp., Pratt & Whitney Large*
    *Commercial Engines Div.,*
    No. 3:03CV1685 (JBA), 2004 WL 1497545 (D. Conn. June 28, 2004) ................................20

*Mizell v. Sara Lee Corp.,*
    No. Civ.A. 2:05CV129, 2005 WL 1668056 (E.D. Va. June 9, 2005) ....................................18

*Morlan v. Universal Guar. Life Ins. Co.,*
    298 F.3d 609 (7th Cir. 2002) ................................................................................9

*Murphy v. Capella Educ. Co.,*
    589 F. App'x 646 (4th Cir. 2014) ..........................................................................8

*Nelson v. MillerCoors, LLC,*
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................12

*Ostolaza-Diaz v. Countrywide Bank, N.A.,*
    360 Fed. App'x 504 (4th Cir. 2010) ..........................................................18, 19, 21

*Owens v. DRS Automotive Fantomworks, Inc.,*
    764 S.E.2d 256 (Va. 2014).................................................................................20

*Persaud Cos., Inc. v. IBCS Gr., Inc.,*
    425 Fed. App'x 223 (4th Cir. 2011) ......................................................................18

*Pungitore v. Barbera,*
    506 Fed. App'x 40, 41 (2d Cir. 2012)....................................................................22

*Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.,*
    256 Va. 553 (1998) ..........................................................................................17

*Robertson v. Robertson,*
    137 Va. 378 (1923) ..........................................................................................16

*Robinson v. Am. Honda Motor Co., Inc.,*
    551 F.3d 218 (4th Cir. 2009) ..............................................................................14

*Rosetta Stone Ltd. v. Google Inc.,*
    732 F. Supp. 2d 628 (E.D. Va. 2010) ....................................................................16

*In re Shop-Vac Marketing and Sales Practices Litig.*,
  MDL No. 2380, Case No. 4:12-md-02380-YK (M.D. Pa.) ....................................................1, 4

*In re Shop-Vac MDL*,
  ECF No. 162-1 ................................................................................................. *passim*

*In re Shop-Vac*
  MDL, ECF No. 173 (July 26, 2016) ........................................................................5

*In re Shop-Vac*
  MDL, ECF No. 211 .........................................................................................2, 5

*In re Shop-Vac MDL*,
  ECF No. 97 ................................................................................................4

*Silva v. Smucker Natural Foods*,
  No. 14-CV-6154 JG RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..........................15

*Simpson v. Champion Petfoods USA, Inc.*,
  --- F. Supp. 3d ---, 2019 WL 2571893 (E.D. Ky. June 21, 2019)....................................15, 18

*State Farm Mut. Auto. Ins. Co. v. Remley*,
  270 Va. 209 (2005) ........................................................................................17, 18

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. May 13, 2013) ........................................................13

*W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
  322 Conn. 541 (2016) ...........................................................................9, 10, 11, 19

*Walker v. Kelly*,
  589 F.3d 127 (4th Cir. 2009) ................................................................................1

*Weber v. U.S. Sterling Sec., Inc.*,
  282 Conn. 722 (2007) .......................................................................................11

*Wynn's Extended Care, Inc. v. Bradley*,
  619 F. App'x 216 (4th Cir. 2015) .........................................................................8

*Zak v. Chelsea Therpauetics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ...............................................................................8

## Statutes

Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-100g, *et seq.*) ...................19, 20

Uniform Commercial Code § 314.............................................................................13

Va. Code § 8.2-314 ..............................................................................................13

Virginia Consumer Protection Act (Va. Code § 59.1, *et seq.*)..............................................8, 20, 21

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................................................8

Fed. R. Civ. P. 12(b) ......................................................................................................................1, 7

Fed. R. Civ. P. 23 ...............................................................................................................................4

Restatement (Second) of Conflict of Laws §§ 145, 148, 188, 221 ...........................................9, 10

## INTRODUCTION

This case is the *second* attempt by Plaintiff's counsel to rehash a nationwide, judicially-approved class action settlement.[1] Plaintiff and his counsel seek to relitigate issues long resolved in the matter captioned *In re Shop-Vac Marketing and Sales Practices Litig.*, MDL No. 2380, Case No. 4:12-md-02380-YK (M.D. Pa.) (the "*In re Shop-Vac*" MDL):[2] namely, that the packaging of certain wet/dry vacuums allegedly misleads consumers because it includes a statement of "Peak Horsepower" on the label that reflects the vacuum motor's power during lab testing. *See, e.g.*, Compl. ¶¶ 1-3. In the *In re Shop-Vac* MDL, however, Judge Yvette Kane of the United States District Court for the Middle District of Pennsylvania approved a nationwide class settlement that provided for future relief to consumers—relief that causes Plaintiff's claim here to fail on the merits as a matter of law. Specifically, Judge Kane ordered clear language explaining the meaning of the term "Peak Horsepower" be placed directly on the product packaging of all Shop-Vac products going forward, which must be consistent with the following:

> "Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes. ***It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor***, including the motor's inertial contribution, achieved in laboratory testing. ***In actual use, Shop-Vac's motors do not operate the peak horsepower shown.***

---

[1] On July 9, 2019, Plaintiff's counsel filed an identical action (with a different plaintiff) against Shop-Vac Corporation ("Shop-Vac") in the United States District Court for the District of New Jersey, styled *Johnson v. Shop-Vac Corporation*, Case No. 3:19-cv-14834-BRM-DEA (D.N.J.). Both Plaintiff here and the plaintiff in *Johnson* filed nearly identical complaints. *Compare* Compl., ECF. No. 1, ¶¶ 1-3 *with* Ex. A, *Johnson*, Class Action Complaint, ECF No. 1 (July 9, 2019).

[2] The court may take judicial notice of the documents publicly filed in the *In re Shop-Vac* MDL and consider them on a Rule 12(b) motion because they are "matters of public record." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *Laurel Gardens, LLC v. MJL Enterprises, LLC*, Civil No. 2:18cv210, 2018 WL 3468362, at *3 (E.D. Va. July 18, 2018) (taking judicial notice of settlement agreement filed in previous case); *Coover v. Brown*, No. 3:15V1866 (VLB), 2016 WL 1588490, at *2 n.1 (D. Conn. Apr. 20, 2016) (taking judicial notice of complaint filed in another case).

Ex. B, Class Action Settlement Agreement, *In re Shop-Vac MDL*, ECF No. 162-1, at p. 12 (emphasis added) ("Clarifying Language"). This Clarifying Language was part of the negotiated relief provided to the nationwide settlement class, an agreement that was reached with help from a retired federal judge as mediator and after extensive negotiation between and among the parties.

Judge Kane specifically analyzed the Clarifying Language and found that it removed any "potential for misrepresentation" because it expressly clarified the meaning of "Peak Horsepower." *See* Ex. C, Memorandum Approving Settlement, *In re Shop-Vac* MDL, ECF No. 211, at p. 20 (confirming the MDL plaintiffs' argument). But "Peak Horsepower" is the exact phrase Plaintiff purports to challenge in *this* lawsuit, even though the Clarifying Language is on the package of the specific product Plaintiff purchased (because it was manufactured by Shop-Vac under the Craftsman brand). The Clarifying Language has been included on the labeling of *all* Shop-Vac made wet/dry vacuums since 2016.

Shop-Vac manufactures and packages a variety of wet/dry vacuums. The Defendant in this case, Stanley Black & Decker, Inc. ("SBD"), is the licensor of the "Craftsman" brand, but it does not manufacture wet/dry vacuums. Rather, SBD licenses the "Craftsman" brand name to various companies that make "Craftsman" brand products, including to Shop-Vac, who manufactured the specific "Craftsman" brand product Plaintiff alleges he bought in or around November or December 2018.

Tacitly realizing the Clarifying Language disposes of his claims, Plaintiff conspicuously omits from his pleading the actual language on the packaging of the product he bought. He has literally cropped the Clarifying Language out of purported images of the product packaging he includes in his pleading. Not only has Plaintiff failed to advise this Court that his claims were

litigated and resolved via a prior nationwide settlement that provided for future relief (*i.e.*, the exact same relief he purports to seek here), Plaintiff has been less than candid with this Court by affirmatively omitting from his pleading the portion of packaging containing the Clarifying Language, though he admits that he "reviewed" the packaging prior to his purchase. Compl. ¶ 5.

Common sense (and Virginia law, which applies here) dictate that no reasonable consumer would be confused by packaging that includes the Clarifying Language, as Judge Kane expressly held. Not only Judge Kane, but both (1) the MDL parties and (2) a retired federal judge/mediator also concurred that this specific Clarifying Language remedied any *possible* confusion going forward to protect future purchasers like Plaintiff. It makes no difference that the defendant in the MDL was Shop-Vac rather than SBD: Shop-Vac implemented the Clarifying Language on *all* of its wet/dry vacuum packaging, whatever the brand, and the specific relief in the settlement was expressly directed to future purchasers like Plaintiff to provide a prospective remedy against potential confusion. Judge Kane's reasoning applied to the Clarifying Language itself, not the brand or the maker of the product, and it is thus equally applicable to the Craftsman-branded wet/dry vacuum that Plaintiff allegedly purchased, which contained the Clarifying Language on the label.

In sum, Plaintiff's claims fail as matter of law and should be dismissed. Virginia law, which applies to Plaintiff's claims under Connecticut's choice-of-law rules, directs that no reasonable consumer could be misled by the box or the label forming the gravamen of Plaintiff's claims. Similarly, in light of the Clarifying Language, no warranties (express or implied) could have been created about the Peak Horsepower measurement on the product—other than which is fully explained on the packaging *including* via the Clarifying Language. No warranties could thus have been breached. Plaintiff's unjust enrichment claim is barred because he has not been

unjustly enriched: as a matter of law, Plaintiff bought a product that is exactly what the label says it is. For similar reasons, Plaintiff's claims of fraud and negligent misrepresentation also fail. Finally, Plaintiff lacks Article III standing to assert claims for injunctive or declaratory relief. For all of these and other reasons set forth below, pursuant to Federal Rule of Civil Procedure 12(b) and 9(b), SBD moves to dismiss all of Plaintiff's claims with prejudice.

## STATEMENT OF FACTS

On December 9, 2016, Judge Kane entered a Final Approval Order approving the settlement in the *In re Shop-Vac* MDL. In that case, plaintiffs alleged that the "Peak Horsepower" measurements of certain Shop-Vac branded vacuums were misleading to consumers because they claimed these measurements did not reflect "the actual operating power and functionality of [the] vacuums." *See* Ex. D, Second Cons. Am. Compl., *In re Shop-Vac MDL*, ECF No. 97, at ¶ 24. Those plaintiffs claimed the products could not achieve their advertised "Peak Horsepower" given the amount of electricity available from a "standard household electrical outlet" and per measurements allegedly taken by plaintiffs' "independent" testing. *Id.* ¶¶ 19, 31.

The *In re Shop-Vac* MDL was heavily litigated and ultimately settled on a nationwide basis. For its part of the settlement, Shop-Vac agreed to make certain changes to its marketing and product packaging so that the term "Peak Horsepower" would be expressly defined and explained to future consumers by putting the Clarifying Language on the product packaging. Ex. B, at p. 12. As part of approving the settlement, the MDL plaintiffs' counsel, who was required by Fed. R. Civ. P. 23 to fairly represent the interests of the nationwide settlement class (which means reasonable consumers), argued to the MDL court that the settlement was in all respects

fair and reasonable to the settlement class. Specifically, with respect to the agreed injunctive relief concerning the changed marketing and product labeling, MDL plaintiffs' counsel argued:

> In addition to the warranty relief, Shop-Vac will alter the manner in which the Vacuums are marketed and labeled, ***to eliminate the potential for misrepresentation.*** The Settlement grants relief addressing the alleged deceptive and misleading practices asserted in this litigation, and remediates their effects upon consumers.

Ex. E, Plfs.' Memo. Supp. Final Approval, *In re Shop-Vac* MDL, ECF No. 173, at 19-20 (July 26, 2016) (emphasis added).

Judge Kane agreed with the MDL plaintiffs' assessment of the purpose and effect of the Clarifying Language to be added to the product packaging, and even though a couple objectors to the settlement argued otherwise, Judge Kane expressly overruled those objections, stating: "***These objections lack merit.***" Ex. C, Memorandum Approving Settlement, ECF No. 211, at p. 20 (emphasis added). Ultimately, notice of the nationwide settlement reached approximately "72% of adults, aged 18+ in the U.S. who shop at Lowe's an estimated average of 3.2 times each." *Id.* at p. 12. The Clarifying Language explaining exactly what "Peak Horsepower" means has been on all of the wet/dry vacuum products Shop-Vac has manufactured since the settlement was approved by Judge Kane, including on the very vacuum that Plaintiff himself alleges he purchased at a Lowe's store in Virginia.

Plaintiff's allegations supporting all of his individual claims make up a single paragraph in the Complaint. Plaintiff William Montgomery claims that he bought a "Craftsman 16 Gallon Wet/Dry Vac with 5.0 Peak HP, Model No. CMXEVBCPC1650, from a Lowe's retail store in Virginia Beach, Virginia." Compl. ¶ 5. He claims to have purchased the vacuum in November or December 2018. *Id.* He alleges that prior to his purchase, he "reviewed the product's labeling and packaging," and "relied on that labeling and packaging to choose his vacuum over comparable models." *Id.* He alleges that he "paid a substantial price premium" for the vacuum

but does not specify an amount. *Id.* The remainder of his allegations recycle those alleged in the MDL and the *Johnson* Complaint pending New Jersey federal court—which Plaintiff essentially copied word-for-word into his pleading here.

Plaintiff nowhere alleges that the product did not perform as intended, or that he suffered any kind of monetary loss, or that he suffered any other kind of injury, or even that he has been unhappy with the product. His sole allegation of "injury" is the conclusory remark that he "did not receive the benefit of his bargain, because his Craftsman vacuum, in fact, does not produce anywhere near 5 horsepower." *Id.* Plaintiff does not even allege that the "5.0 Peak HP" rating is inaccurate. What he alleges is that he subjectively misunderstood the label to be a representation and warranty that the wet/dry vacuum was able to produce "5[.0] Peak HP" during "normal use and operation" (*id.*) even though the packaging expressly stated otherwise. *See* Declaration of Susan H. Wolf ("Wolf Decl.") ¶ 11 (filed concurrently herewith).

Plaintiff (strategically) omits the most relevant portions of the product's packaging. Squarely on the packaging *next to* the 5.0 Peak HP, Shop-Vac included a "dagger" (a "†" symbol). This symbol directs consumers to the very same Clarifying Language approved (and ordered) by Judge Kane, located on the front panel and one of the side panels of the product packaging:

> †"Peak Horsepower" (PHP) is a term used by the wet-dry vacuum industry for consumer comparison purposes. ***It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor,*** including the motor's inertial contribution, achieved in laboratory setting. ***In actual use, wet dry motors do not operate at the peak horsepower shown.***

Wolf Decl., Exs. A & B (artwork appearing on carton box for wet/dry vacuum allegedly purchased by Plaintiff); Wolf Decl., Ex. C (identically sized image of the lithograph artwork containing this statement as affixed to the box carton) (all emphasis added).

Because Plaintiff has included in his complaint portions of the packaging of his Craftsman wet/dry vacuum, SBD presents to this Court the entire packaging and labeling art printed on the box of the vacuum that Plaintiff claims to have purchased. Wolf Decl., Exs. A-C. That artwork plainly demonstrates that the court-ordered Clarifying Language is, in fact, contained on the box he alleges he reviewed. *Id.* Comparing the exact artwork printed on Plaintiff's Craftsman wet/dry vacuum with the pictures of the box Plaintiff includes in the Complaint (at ¶¶ 14-15) makes clear the snippets included by Plaintiff are (at best) inaccurate representations of the labeling and the packaging. To the contrary, as is evident from the actual packaging, the Clarifying Language was on the packaging of the Craftsman 16 Gallon Wet/Dry Vac with 5.0 Peak HP, Model No. CMXEVBCPC1650. Wolf Decl., ¶ 11 & Ex. C. Based on Plaintiff's own averment, it is this packaging that Plaintiff "reviewed" before making his purchase. Compl. ¶ 5.[3]

Unfortunately for Plaintiff, Judge Kane already determined that no reasonable consumer could be confused about what "5.0 Peak HP" means when accompanied by the Clarifying Language she approved. And there is no reason for this Court not to adopt Judge Kane's

---

[3] The Court may judicially notice the complete product packaging because Plaintiff relies on it and refers to it in his pleading. "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference" a relevant document that is "integral to the complaint," the defendant can introduce that document "when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Inds., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Judicial-notice principles also support the Court considering the packaging artwork submitted here. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (a motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken."). *See also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (judicial notice appropriate to stop plaintiff from selectively "extracting an isolated statement from a document and placing it in the complaint" without "full context of the document")).

reasoning here. When plaintiffs present courts with implausible claims about alleged consumer confusion, they dismiss them. After all, on a motion to dismiss, a court need not check its common sense at the door. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *Id.* The court should separate the legal and factual elements of a claim, accept the non-conclusory facts, and disregard the plaintiff's legal conclusions. *Id.* And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Moreover, Rule 9(b)'s heightened pleading standard applies to all of Plaintiff's claims (including his warranty claims because they are based on allegedly fraudulent conduct).[4] *DiMuro v. Estee Lauder Cos., Inc.*, Civil No. 3:12CV01789(AVC), 2013 WL 12080901, at *4-6 (D. Conn. Nov. 22, 2013), *aff'd sub nom DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27, 30-32 (2d Cir. July 10, 2014). To satisfy Rule 9(b), Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro*, 2013 WL 12080901, at *4. "In addition, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent." *Zak v. Chelsea Therpauetics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). These heightened pleading requirements protect defendants from baseless suits, like this one, that damage a defendant's reputation and goodwill, cost money and needlessly divert resources, and

---

[4] Although Virginia law applies to Plaintiff's claims for reasons set forth below, the federal pleading standards set forth in Fed. R. Civ. P. 9(b) apply to federal courts in the Second and Fourth Circuits alike. *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (affirming dismissal and noting "proposed VCPA claim would be governed by the heightened pleading standards of Rule 9(b)"); *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (affirming dismissal of fraud and VCPA claims pursuant to Rule 9(b)).

prevent fishing expeditions meant simply to uncover relevant information during the discovery process. *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004).

In addition, at the motion to dismiss stage, the Court should consider only Plaintiff's individual claims as alleged in the complaint. *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 142 n.16 (2d Cir. 2015); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs."); *Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000) ("In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

## ARGUMENT

As an initial matter, Plaintiff *purports* to bring nationwide class claims under Connecticut law with a Virginia subclass (tacitly conceding Virginia law applies to his own claims) without explaining: (1) why it would be proper to apply the laws of Connecticut to a nationwide class (it would not); and (2) why (if application of Connecticut law to all proposed class members were proper) it would be necessary to have a Virginia subclass. In fact, under applicable choice-of-law principles, Virginia law applies to Plaintiff's individual claims, barring his claims under Connecticut law (both individually and on behalf of a purported class). Moreover, even under Virginia law, Plaintiff's individual claims fail as a matter of law, which means all claims of the proposed nationwide class fail too.

## I.    VIRGINIA LAW GOVERNS PLAINTIFF'S INDIVIDUAL CLAIMS UNDER CONNECTICUT'S CHOICE-OF-LAW RULES

To decide which state's law applies, "a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002). Connecticut applies the most significant relationship test to determine choice of law on tort-based claims. *Jaiguay v. Vasquez*, 287 Conn. 323, 349–50 (2008) (adopting most significant relationship test of Restatement (Second) of Conflict of Laws for tort actions); *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 557 (2016) ("the choice of law principles applicable to tort actions also apply to claims brought under CUTPA"). Under this test, it is the significance, not the number, of contacts that governs the choice of law inquiry. Such contacts include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* at 557; Restatement (Second) of Conflict of Laws § 145 (1971).[5]

In this case, factors (a), (b), and (d) favor applying Virginia law, and factor (c) is neutral. Factors (a) and (b) point to Virginia law because Plaintiff alleges that he bought his wet/dry vacuum at a Lowe's in Virginia Beach, Virginia. Compl. ¶ 5. Plaintiff alleges that he reviewed

---

[5] Other potentially applicable sections of the Restatement (Second) of Conflict of Laws include § 148 (fraud torts), § 188 (contract claims), and § 221 (unjust enrichment claims). All emphasize the same types of contacts, such as the place where "plaintiff acted in reliance upon the defendant's representations" or the "place where a tangible thing which is the subject of the transaction between the parties was situated at the time" (§ 148); the place "of contracting" or "of negotiation" or of "performance" (§ 188); the place "where a relationship between the parties was centered" or where "a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of enrichment" (§ 221); and the place of the domicile, residence, and place of incorporation of the parties (all). No matter what set of factors is used, the analysis all points towards the application of Virginia law, and for purposes of this motion, therefore, SBD assumes Virginia law applies under any Restatement section.

and "relied on" the vacuum's packaging in Virginia and saw representations on the package "prior to, and at the time of purchase" in Virginia. *Id.*

Although Plaintiff alleges that SBD carried out its "advertising, marketing, labeling, packaging, testing, and/or corporate operations" in Connecticut (*id.* ¶ 6) and "a substantial part of the events, omissions, and acts giving rise to the claims" occurred in Connecticut (*id.* ¶ 10), such allegations are conclusory and unsupported by any factual basis (particularly given the only nexus to Connecticut is that the licensor of the Craftsman brand, SBD, is organized under the law of that state). *Id.* ¶ 6. Factor (c) is neutral because Plaintiff alleges that he is a citizen of Virginia and alleges that SBD is a Connecticut corporation with its principle place of business in Connecticut. *Id.* ¶¶ 5-6. Finally, factor (d) supports the application of Virginia law because although the parties are not in privity (Plaintiff purchased his vacuum from a Lowe's retail store and not from SBD), Plaintiff's purchase occurred in Virginia, where Plaintiff lives, and it is in Virginia where Plaintiff experienced his subjective belief concerning the wet/dry vacuum's packaging (*id.* ¶ 5).

The Court should therefore apply Virginia law to Plaintiff's individual claims. Both federal and state courts applying Connecticut choice-of-law rules commonly apply the law of the state where the alleged injury occurred and where the plaintiff resides, even when the defendant is a Connecticut corporation. *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 737 (2007) (in consumer class action, applying law of state where plaintiff lived and alleged injury occurred even though defendant resided in Connecticut); *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *7 (D. Conn. Mar. 15, 2017) (same); *W. Dermatology Consultants*, 322 Conn. at 560 (applying law of state where plaintiff lived even where sales agreement may have been drafted in Connecticut and Connecticut may have been state where

parties' relationship initiated). Here, Virginia has the most significant relationship to this dispute, and since the Court will apply Virginia law to Plaintiff's individual claim, Plaintiff cannot bring any individual claims under Connecticut law. *W. Dermatology Consultants*, 322 Conn. at 565-65 (affirming dismissal of CUTPA claim because New Mexico law applied).

## II.    ALL OF PLAINTIFF'S INDIVIDUAL CLAIMS FAIL

### A.    Plaintiff's Express and Implied Warranty Claims Fail (Counts I and II)

Plaintiff's express and implied warranty claims fail for at least two reasons. *First*, Plaintiff fails to plausibly allege SBD made a statement on the product packaging that: (a) created an express warranty, but that (b) turned out to be inaccurate. *Second*, Plaintiff does not (and cannot) plausibly allege his vacuum does not pass without objection in the trade, does not conform to the description on the box (with the Clarifying Language), or is unmerchantable.

### 1.    Plaintiff does not (and cannot) plausibly allege SBD made a statement on the product packaging about Peak Horsepower that created an express warranty that turned out to be inaccurate

Plaintiff's express warranty claim requires as a predicate a statement that created an express warranty that turned out to not be true. Here, Plaintiff purports to allege that the wet/dry vacuum's packaging creates an express warranty that Peak Horsepower describes everyday use and that this was part of the parties' bargain—even though the packaging contains Clarifying Language that actually says the opposite. *See DiMuro*, 2013 WL 12080901, at *5 ("The breach of express warranty claim is based on the same underlying conduct that is the basis for the state consumer protection/fraud claims."). But that cannot be true because the Clarifying Language on the front panel of the packaging tells the purchaser in clear and unmistakable terms that the "motor does not operate at the peak horsepower shown." This language was found by Judge Kane to cure and eliminate the possibility that a purchaser could be confused about this meaning of this measurement. Thus, Plaintiff has not (and cannot) plausibly allege that the vacuum's

packaging created a warranty with respect to the Peak Horsepower measurement that SBD somehow breached (it plainly did not). His express warranty claim fails. *See also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 678 (E.D.N.Y. 2017) (dismissing express warranty claim alleging misrepresented location of brewery of beer where label "explicitly identif[ied]" where beer was brewed); *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*, 275 F. Supp. 3d 910, 926 (N.D. Ill. 2017) (dismissing express warranty claim after noting that courts must "look to the entire contract—or, for an express warranty claim, product label" to construe terms of warranty).

### 2.    Plaintiff's wet/dry vacuum is merchantable, and he cannot plausibly plead otherwise

Plaintiff does not (and cannot) state a valid claim against SBD on the theory that his Craftsman vacuum is unmerchantable. Compl. ¶ 50. Although Plaintiff's allegations are vague on this point, Plaintiff appears to allege that his vacuum was not merchantable based on four sub-parts of the U.C.C.-based implied warranty statutes, which states "Goods to be merchantable must be at least such as:

(a)    pass without objection in the trade under the contract description; and

(b)    in the case of fungible goods, are of fair average quality within the description; and

(c)    are fit for the ordinary purposes for which goods are used; and

. . .

(f)    conform to the promises or affirmations of fact made on the container or label if any."

Compare Compl. ¶ 50 with Va. Code § 8.2-314; *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Pr. Litig.*, No. 1:16MD2743 (AJT/TRJ), 2017

WL 2911681, at *13 (E.D. Va. July 7, 2017). But Plaintiff's claim does not plausibly plead SBD breached any of these provisions.

*First*, Plaintiff fails to plausibly allege that his wet/dry vacuum "could not pass without objection in the trade under the contract description" or that his vacuum was not "of fair average quality within the description." In fact, he does not and cannot allege that the vacuum failed to meet the description of the packaging as a whole given the packaging depicts a wet/dry vacuum and that is, in fact, exactly what he purchased. The placement of the Clarifying Language on the front panel of the product packaging also means that the product is "within the description of the packaging." Plaintiff thus fails to state an implied warranty claim under U.C.C. subparts (a), (b), and (f). *See also Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. May 13, 2013) (finding consumer product claim "more suited to a breach of express warranty claim, as they [pertain to] specific representations made by the product manufacturer rather than characteristics that affect the product's merchantability.").

*Second*, Plaintiff does not actually allege that his vacuum is not "reasonably capable of performing [its] ordinary function." *Bayliner Marine Corp. v. Crow*, 257 Va. 121, 128 (1999). The standard is "ordinary" use, which "incorporates trade quality standards and the consumer's reasonable expectations into the concept of merchantability." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 225 (4th Cir. 2009). In fact, "to prove that a product is not merchantable, the complaining party must first establish the standard of merchantability in the trade." *Bayliner*, 257 Va. at 128 (dismissing implied warranty claim and finding no evidence that boat was not generally merchantable as fishing boat); *Robinson*, 551 F.3d at 225 (dismissing implied warranty claim after analyzing product performance in context of the trade). In this case, nowhere does Plaintiff allege that his wet/dry vacuum did not operate to do what it is intended to do: namely,

clean up debris and liquids. The Complaint also does not allege the "standard of merchantability" in the wet/dry vacuum industry, and for good reason—the industry standard is to use "Peak Horsepower" ratings exactly as Craftsman did here, and therefore Plaintiff cannot allege that the statements "do not conform to the quality of other brands on the market." *Zito*, 2016 WL 2946157, at *8; Wolf Decl. ¶ 11 & Exs. A, B, & C. And lest there be any doubt for consumers, the vacuum's packaging told a consumer how he or she should consider the Peak Horsepower ratings in the ordinary use of the vacuum: "**In actual use**, wet dry vacuum **motors do not operate** at the peak horsepower shown." Wolf Decl., Exs. A-C (emphasis added).

Indeed, Plaintiff never alleges anything that remotely suggests the vacuum was unmerchantable or did not work as intended—or even as Plaintiff subjectively expected the vacuum to work. He does not allege that his vacuum failed to pick up dust or dirt or clean up other items—the ordinary use of a vacuum. *See* Compl. at *passim*. And merchantability does not mean perfection. Even if Plaintiff's vacuum did not meet his "every expectation," merchantability only encompasses "a minimum level of quality." *Silva v. Smucker Natural Foods*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015). *See also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 298 (4th Cir. 1989) (holding merchantability does not encompass subjective consumer expectations that a product will hold its value).

In this case, Plaintiff has not alleged that the vacuum failed to live up to this standard of merchantability. Nor can he. At bottom, Plaintiff's implied warranty claim fails because his subjective hopes about the meaning of Peak Horsepower do not equate to the product not being merchantable (and his subjective hopes are inherently unreasonable given the Clarifying Language). *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) (dismissing consumer fraud and express and implied warranty claims while noting that the law.

Implied warranty claims focus only on whether a product performs the ordinary functions of that product, not on whether the product failed to "conform to the promises made on its containers, labels, and literature." *Silva*, 2015 WL 5360022, at *11; *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (dismissing implied warranty claims where product claim that baby lotion was "clinically proven to help babies sleep better" did not change general purpose of baby lotion—to cleanse and moisturize babies' skin).

### B.    Plaintiff Cannot State A Claim For Unjust Enrichment Under Virginia Law (Count III)

Plaintiff's unjust enrichment claim also fails for two reasons. First, Plaintiff must plausibly allege that he conferred a benefit directly upon SBD to state a claim. "An indirect benefit or a benefit to a third party is simply insufficient to sustain an unjust enrichment claim." *Simpson v. Champion Petfoods USA, Inc.*, --- F. Supp. 3d ---, 2019 WL 2571893, at *16 (E.D. Ky. June 21, 2019) (construing Virginia law). Here, SBD did not make or sell the product Plaintiff complains of, and no direct benefit was conferred on SBD as a result of Plaintiffs' purchase. His claim for unjust enrichment thus fails.

Second, unjust enrichment is an equitable remedy, rooted in the principle of fairness that a plaintiff can recover back which a defendant "ought to refund." *Robertson v. Robertson*, 137 Va. 378, 382 (1923). "In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice to refund the money." *Id.* There has been no injustice here. Plaintiff does not allege that SBD failed to include the Clarifying Language as specified by the nationwide settlement, language which was required to be included on the product packaging to remove the *potential* for misrepresentation—and this same language appeared on the packaging of the Craftsman product Plaintiff alleges he purchased. The Clarifying Language explains the meaning of the very term Plaintiff claims is misleading and

was actually on the box that Plaintiff claims he reviewed before his purchase. That explanation says that the Peak Horsepower measurement does *not* reflect the operation of the vacuum. ("In actual use, wet dry motors do not operate at the peak horsepower shown.") Moreover, Plaintiff never alleges that his wet/dry vacuum fails work or perform as a vacuum is intended. SBD did not, and could not possibly, unfairly profit at Plaintiff's expense—he did not purchase the product from SBD, and he got exactly what he paid for. Refunding to Plaintiff any part of the amount paid for his vacuum would be a windfall to him regardless of who made the vacuum, and therefore, considering the "ties of natural justice," his unjust enrichment claim should be dismissed. *Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628, 631 (E.D. Va. 2010).

### C.    Plaintiff's claim for negligent misrepresentation fails (Count IV) and Plaintiff cannot state a claim for fraud (Count V)

In Virginia, the elements of common law fraud are "a false representation of a material fact; made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; reliance on that false representation to plaintiff's detriment; and resulting damage." *Anthony v. Verizon Virginia, Inc.*, 288 Va. 20, 34 (2014). Under Virginia law, negligent misrepresentation is the equivalent of constructive fraud. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559 (1998) ("The essence of constructive fraud is negligent misrepresentation."). Constructive fraud requires "clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 220 (2005).

Plaintiff's fraud and negligent misrepresentation fail for two independent reasons. First, Plaintiff does not allege a misrepresentation or false statement. The Clarifying Language, approved by Judge Kane, forecloses this argument. The statement on the product packaging that

Plaintiff alleges he reviewed prior to his purchase explains what the Peak Horsepower measurement means. That language says in plain terms exactly the opposite of what Plaintiff claims is misleading: "In actual use, wet dry motors do not operate at the peak horsepower shown." There is simply nothing misleading about the packaging read as a whole. Plaintiff should not be allowed to carve out an isolate phrase—divorcing it from its explanation on the package—and call it confusing. He cannot "misquote or misleadingly excerpt the language" of the packaging label and "expect his action to survive a motion to dismiss or, indeed, to escape admonishment." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (dismissing consumer fraud case after reasoning "the presence of a disclaimer or similar clarifying language may defeat a claim of deception").

Second, even if Plaintiff pled a misrepresentation or false statement, though he has not, his fraud and negligent misrepresentation claims are also doomed because Plaintiff does not and cannot allege justifiable reliance. "[T]o establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *Metrocall*, 246 Va. at 374. A negligent misrepresentation claim also requires Plaintiff to show he was "damaged as a result of his reliance upon the misrepresentation." *Remley*, 270 Va. at 220. Justifiable reliance must be pled with particularity. *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987).

The Complaint alleges with little detail that Plaintiff "relied on that labeling and packaging to choose his vacuum over comparable models." Compl. ¶ 5. But as with all of Plaintiff's tort-based claims, Plaintiff's alleged reliance on the Peak Horsepower rating of the vacuum he allegedly purchased—without reference to the Clarifying Language explaining that measurement—is neither justified nor reasonable. Courts routinely reject attempts by plaintiffs to

bring "fraud" claims when they are not justified in "relying" on a "misrepresentation" that is contradicted or clarified by explicit written language available for them to review. *E.g.*, *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 Fed. App'x 504, 507 (4th Cir. 2010) (affirming dismissal where plaintiffs could not show reasonable reliance on alleged fraudulent oral communications where they were "presented with documents that unambiguously spelled out the terms" of the agreement); *Mizell v. Sara Lee Corp.*, No. Civ.A. 2:05CV129, 2005 WL 1668056, at *7-8 (E.D. Va. June 9, 2005) (granting motion to dismiss breach of employment contract and fraud case where plaintiff could not establish reasonable reliance on employee handbook that explicitly defined employment relationship as "voluntary" and stated employment could be terminated at any time).[6] As the Supreme Court of Appeals of Virginia aptly noted long ago:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Costello v. Larsen*, 182 Va. 567, 571-72 (1944). Therefore, even if there were any "false representations" (there are not), *Costello* poignantly forecloses Plaintiff's claims. The Fourth Circuit has been even more succinct: "Stated another way, Plaintiffs cannot be heard to complain when they failed to read the relevant documents." *Ostolaza-Diaz*, 360 Fed. App'x at 507 (internal citation omitted).

---

[6] *See also Simpson*, 2019 WL 2571893, at *15 (dismissing fraud claim under Virginia law where "by ordinary diligence and attention" plaintiffs could have readily discovered mercury and arsenic levels in pet food); *Persaud Cos., Inc. v. IBCS Gr., Inc.*, 425 Fed. App'x 223, 226 (4th Cir. 2011) (reversing grant of summary judgment and holding reliance on alleged misstatements in marketing brochures was unreasonable where plaintiff "had the ability to read" relevant provisions in contract before signing).

Judge Kane already determined that a reasonable consumer reading the packaging to note the exact Peak Horsepower rating on a wet/dry vacuum would also see the Clarifying Language explaining that rating. For that reason, the settlement and thus her order requires it to be put onto the packaging, which Shop-Vac did, including on the packaging for the Craftsman-branded vacuum Plaintiff purchased. Given the Clarifying Language, Plaintiff's alleged reliance on the fully explained and defined Peak Horsepower language as a basis for his misrepresentation and fraud claims was not justified as a matter of law.

     **D.    Plaintiff cannot state a claim nor does he have standing to represent a class under the Connecticut Unfair Trade Practices Act (Count VI)**

As noted, Connecticut law does not apply to Plaintiff's individual claims. Disc. *supra* at 9-11. Plaintiff (a Virginia resident, who alleges he purchased a product in Virginia) has no connection whatsoever to Connecticut. His non-viable claims are governed by Virginia law. His individual Connecticut Unfair Trade Practices Act claim ("CUTPA") (Count VI) should thus be dismissed. *W. Dermatology Consultants*, 322 Conn. at 557.

But even if he could invoke the CUTPA (though he cannot), by the plain language of the statute, Plaintiff could not do so in a representative capacity in a class action. The CUTPA only allows a plaintiff to bring a class action on behalf of "other persons similarly situated who are residents of this state or injured in this state." Conn. Gen. Stat. § 42-100g(b). But in this case, Plaintiff is neither a resident of Connecticut nor was he injured in Connecticut. Instead, he alleges that he is a resident of Virginia, who allegedly purchased the product at issue in Virginia, viewed all representations at issue in Virginia, and was injured in Virginia. Compl. ¶ 5. He therefore could never represent a class with the "statutorily required in-state residency or injury characteristics." *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015). This is true even if the Court credits Plaintiff's conclusory allegations of "unlawful

conduct occurring inside the state," which does not overcome the clear language of the statute. *Metro. Enter. Corp. v. United Techs. Int'l, Corp., Pratt & Whitney Large Commercial Engines Div.*, No. 3:03CV1685 (JBA), 2004 WL 1497545, at \*4 (D. Conn. June 28, 2004). Plaintiff's CUTPA claim brought on behalf of himself and a proposed nationwide class is therefore properly dismissed with prejudice.

### E.    Plaintiff's claim under the Virginia Consumer Protection Act also fails (Count VII)

The Virginia Consumer Protection Act ("VCPA") prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," such as "misrepresenting that goods or services have certain [] characteristics," or "misrepresenting that goods or services are of a particular standard, quality, grade, style, or model." Va. St. § 59.1-200. At the bare minimum, the VCPA requires a "finding of tendency to mislead and deceive." *Commonwealth of Va. v. Smoky Mtn. Secrets, Inc.*, 41 Va. Cir. 564, 1997 WL 1070558, at \*5 (Cir. Ct. Richmond Apr. 1, 1997). As with Plaintiff's misrepresentation and fraud claims, "Virginia courts have consistently held that reliance is required to establish a VCPA claim," which "must also be reasonable and justified." *Adardour v. Am. Settlements Inc.*, No. 1:08cv798(AJT/TRJ), 2009 WL 1971458, at \*3 (E.D. Va. July 2, 2009) (collecting cases); *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256 (Va. 2014).

"Under Virginia law, a plaintiff cannot reasonably rely on an alleged misrepresentation in the face of plainly contradictory language contained in a contract or other document known by the plaintiff." *Adardour*, 2009 WL 1971458 at \*3. SBD submits that the "Peak Horsepower" rating on the packaging label is not a misrepresentation in the first instance, but even if the Court were to credit Plaintiff's assertion that it is, the Clarifying Language on the packaging of the product alleged purchased by Plaintiff means that Plaintiff cannot plead justifiable reliance and

therefore cannot maintain a VCPA claim. The packaging could not have made clearer precisely what Peak Horsepower means: It defined the term explicitly. Plaintiff should not be allowed to plead a claim based on his failure to read the product packaging label. *Costello*, 182 Va. at 571-72; *Ostolaza-Diaz*, 360 Fed. App'x at 507.

### F.     Plaintiff cannot seek injunctive or declaratory relief as a matter of law (Prayer for Relief at "g")

All of Plaintiff's individual claims fail as a matter of law. Even if they did not, Plaintiff lacks Article III standing to pursue injunctive and/or declaratory relief. "Past exposure to illegal conduct does not now in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Lujan, v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Accordingly, a plaintiff (as here) lacks standing to pursue injunctive or declaratory relief unless he affirmatively demonstrates some likelihood of future harm. *Id.*; *see also Pungitore v. Barbera*, 506 Fed. App'x 40, 41 (2d Cir. 2012) ("a plaintiff must demonstrate standing separately for each form of relief sought," and "when seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." (emphasis in original)). As noted above, there is no risk of future harm to Plaintiff because he (1) already purchased his Craftsman vacuum and (2) does not (and could not plausibly) allege that he would be misled about the Peak Horsepower rating if he decides to purchase a Craftsman vacuum in the future. Moreover, the Clarifying Language on the packaging that was negotiated by the MDL parties with the assistance of a former federal judge/mediator and that was subsequently approved by Judge Kane provided *prospective* relief to consumers by requiring the Clarifying Language about the meaning of Peak Horsepower on the packaging of the very product Plaintiff purchased. Wolf Decl., Ex. C.

## III.     BECAUSE PLAINTIFF'S INDIVIDUAL CLAIMS FAIL, HE CANNOT ASSERT CLAIMS ON BEHALF OF ANY PROPOSED CLASS MEMBER

Plaintiff's individual claims fail and, therefore, he cannot assert any claims on behalf of anyone else because he lacks standing to do so. To demonstrate Article III standing, Plaintiff must allege "(1) an 'injury in fact,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) it must be likely that the injury will be 'redressed by a favorable decision.'" *DiMuro*, 2013 WL 12080901, at *3 (citing *Lujan*, 504 U.S. at 560-61). Critically, "[i]ndividual standing is a prerequisite for all actions, including class actions," and the "standing question therefore precedes any determination under [Rule] 23." *Fraiser*, 109 F. Supp. 3d at 503. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).[7] Because the Court considers only the named plaintiff's claims at this stage, *see Johnson v. Nextel Commc'ns Inc.*, 780 F.3d at 142 n.16, a dismissal of all Montgomery's claims would thus result in dismissal of the entire case, *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122–23 (S.D.N.Y. 2002).

## CONCLUSION

There is nothing misleading about including on the product packaging Peak Horsepower measurements from laboratory testing and also explaining on that packaging exactly what the term means. A federal judge agreed, and blessed the addition of the Clarifying Language to the packaging in order to prevent future purchasers from the prospect of confusion as to the meaning

---

[7] Plaintiff also lacks Article III standing to pursue claims with respect to products that he did not purchase, although this point is mooted by the failure of Plaintiff to plead viable claims with respect to himself. *DiMuro*, 2013 WL 12080901, at *3; *Lujan*, 504 U.S. at 560-61.

of Peak Horsepower. The packaging for Plaintiff's wet/dry vacuum says very plainly that the vacuum motor does not operate at the Peak Horsepower shown—which is dispositive of Plaintiff's Complaint as a matter of law. The Court should thus dismiss the Complaint in its entirety, with prejudice, due to "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). No repleading could make Plaintiff's claims of misrepresentation plausible in light of the Clarifying Language on the package Plaintiff alleges he reviewed, the MDL court's findings regarding that language, and the prospective relief provided in the previous nationwide class action settlement (from which Plaintiff is benefitting today).

<div style="margin-left: 40%;">

**DEFENDANT,**
**STANLEY BLACK & DECKER, INC.,**
**d/b/a CRAFTSMAN**

By: /s/ Paul D. Williams
    Paul D. Williams (ct05244)
    John W. Cerreta (ct28919)
    Kaitlin A. Canty (ct29074)
    Day Pitney LLP
    242 Trumbull Street
    Hartford, Connecticut 06103-1212
    (860) 275-0100
    (860) 275-0343 (fax)
    pdwilliams@daypitney.com
    jcerreta@daypitney.com
    kcanty@daypitney.com

    Michael B. Shortnacy (*pro hac vice* pending)
    King & Spalding LLP
    633 West Fifth Street
    Suite 1600
    Los Angeles, CA 90071
    (213) 443 4355
    mshortnacy@kslaw.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Memorandum of Law in Support of Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

By: <u>/s/ Paul D. Williams</u>