UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM MONTGOMERY and DONALD  :
WOOD, JR., individually and    :
on behalf of all others        :
similarly situated,            :
  plaintiffs                   :
                               :
v.                             : Civil No. 3:19-CV-01182 (AVC)
                               :
STANLEY BLACK & DECKER, INC.,  :
d/b/a CRAFTSMAN,               :
  defendant.                   :

<u>RULING ON THE DEFENDANT'S MOTION TO DISMISS</u>

This is a putative class action for damages and other relief in which the plaintiffs, William Montgomery and Donald Wood, Jr., allege that the defendant, Stanley Black & Decker, Inc., d/b/a/ Craftsman ("Stanley") packaged its Craftsman-brand wet/dry vacuums ("vacuums") with false and misleading claims regarding the "peak horsepower" of the product, which misled "consumers into believing that the vacuums can in fact generate the claimed horse power, even though these claims are illusory and can never be obtained in actual use."

The complaint is brought pursuant to the Virginia Consumer Protection Act, §59.1-200, *et seq*, with regard to Montgomery and the Virginia subclass, New York's General Business Law §§ 349 and 350, with regard to Wood and the New York subclass, and common law tenets including breach of express warranty, breach of implied warranty, unjust enrichment, negligent

misrepresentation, and fraud.  The plaintiffs allege

jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).[1]

Stanley now moves to dismiss Montgomery and Wood's

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

arguing that they have failed to state a claim upon which relief

may be granted and that Montgomery and Wood's claims fail as a

matter of law because dismissal of all Montgomery and Wood's

claims result in dismissal of the entire case.

For the following reasons, Stanley's motion to dismiss

Montgomery and Wood's complaint is GRANTED.

## FACTS

Montgomery and Wood allege the following relevant facts:

On June 27, 2018, Wood purchased a Craftsman-brand vacuum[2]

from a Sears retail store in Massapequa, New York.  Wood resides

in Deer Park, New York.  In November or December 2018,

Montgomery purchased a Craftsman-brand vacuum[3] from a Lowe's

retail store in Virginia Beach, Virginia.  Montgomery resides in

Virginia Beach, Virginia.  They both allege that, prior to their

purchases, they reviewed the product's labeling and packaging

---

[1]   28 U.S.C. § 1332(d)(2)(A) provides, in relevant part: "The district courts
shall have original jurisdiction of any civil action in which the matter in
controversy exceeds the sum or value of $5,000,000, exclusive of interest and
costs, and is a class action in which . . . any member of a class of
plaintiffs is a citizen of a State different from any defendant."
[2]   Specifically, Wood purchased a "Craftsman XSP 12 Gallon Wet/Dry Vac" with
5.5 Peak HP," Model No. 12006."
[3]   Specifically, a "Craftsman 16 Gallon Wet/Dry Vac" with "5.0 Peak HP, Model
No. CMXEVBCPC1650."

and saw that the vacuum purportedly had a horsepower rating of "5.5 Peak HP" and "5 Peak HP," respectively.   They chose the Craftsman-brand vacuum over comparable models relying on the labeling and packaging.   They "understood them as representations and warranties" that the vacuums were capable of producing the purported Peak HP during normal use and operation. They relied on these representations and warranties in purchasing the vacuum, the representations were part of the basis of the bargain, and they would not have purchased their Craftsman vacuums on the same terms had they known these representations were not true.   They paid "a substantial price premium due to the false and misleading HP claims."   They did not receive the benefit of the bargain because the vacuum does not produce anywhere near the purported Peak HP. 5.5 horsepower."[4]

Stanley is a Connecticut corporation, with its principal place of business at 1000 Stanley Drive, New Britain, Connecticut.   Stanley "manufactures, sells, and/or distributes Craftsman-brand products and is responsible for the advertising, marketing, trade dress, and packaging of Craftsman wet/dry vacuums," including the vacuums at issue and Stanley

---

[4] They further understood that Sears was acting with the knowledge and approval of Stanley and/or as the agent of Stanley and that "the purchase involved a direct transaction between himself and Stanley."

manufactured, marketed, and/or sold the vacuums during the class period.[5]  Stanley's customer relations department is responsible for fielding customer complaints and monitoring customer complaints is also located in Connecticut.[6]

The vacuums at issue include all Craftsman-brand vacuum models where the labeling and packaging of the vacuums purport that the vacuums produce "1.75 Peak HP, 2.0 Peak HP, 2.5 Peak HP, 3.0 Peak HP, 3.5 Peak HP, 4.0 Peak HP, 4.25 Peak HP, 5.0 Peak HP, 5.5 Peak HP, 6.0 Peak HP, or 6.5 Peak HP. . . ." ("Peak HP claims") (internal quotation marks omitted from original in the first amended complaint).  This includes the two models purchased by Montgomery and Wood.  The vacuums are uniformly labeled, packaged, marketed, and advertised with the Peak HP claim.  Online retailers' websites uniformly and prominently feature the Peak HP claims for consumers to make a comparative assessment of the Craftsman wet/dry vacuums.[7]  As an example, Montgomery and Wood cite to Lowe's website displaying

---

[5]   Stanley denies that they manufacture the wet/dry vacuums. Rather, Stanley indicates that it is the licensor and it licenses the Craftsman brand name to various companies that make the products which include Shop-Vac and Cleva, the companies who manufactured the models purchased by the plaintiffs.

[6]   The plaintiffs allege that the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations are primarily carried out at Stanley's headquarters and facility in Connecticut. The technical training center, engineering, marketing, and warrant departments are also located in Connecticut.

[7]   Montgomery and Wood included images from amazon.com which show pictures of the Craftsmen-brand vacuums with the capacity and the Peak HP directly below. The court notes, however, that Montgomery and Wood do not show the full details shown on the website lists; nor do they allege that they purchased or used the internet in the purchase of their products.

the "Craftsman 16-Gallon 5-HP Shop Vacuum" in the product name,
as well as in the product information section in a subheading
entitled "Description."

Montgomery and Wood allege that the same Peak HP claims are
incorporated into the packaging, labeling, and advertising on
the retail packaging of the vacuums at issue "on shelves at Ace
Hardware and Lowe's."[8]  Further, the Peak HP claims are "directly
on many of the [v]acuums themselves."

Montgomery and Wood allege that the "HP claims are false
and misleading, as the actual operating power and functionality
of the [v]acuums, under any condition, is only a small faction
of these representations" and the HP claims "are exaggerated by
approximately 60-85%."

In support of their allegation that the HP claims are false
and misleading, Montgomery and Wood make the following claims:
Both consumers and technical experts understand and use the term
horsepower as a standard unit of measurement for determining the
work power, or power output, of a particular device.[9]  For an
electrical device to output a particular work power, the device
must draw, or input, an equivalent power from an electrical

---

[8]   As noted by Stanley, Montgomery and Wood do not show the complete
packaging, labeling, and advertising for the vacuums at issue, leaving out
all explanatory language regarding the Peak HP claims. Neither defendant
alleged to have purchased their vacuum at Ace Hardware.

[9]   Montgomery and Wood allege that the definition of 1 horsepower converted
to electric terms is 754.7 watts.  As an example, they calculate that the
equivalent of 2.5 horsepower is 1865 watts, and 6.5 horsepower is 4849 watts.

source such as a wall outlet or circuit.  In the United States,
residential and commercial wiring is strictly and uniformly
regulated because wiring size limits the amount of electricity
that can flow before the wire heats up and potentially catches
fire.  Residential circuits are normally limited to 15 amps in
120V circuits, which means that the total wattage is 1800
watts.[10]  Receptacles/outlets in the United States are
standardized NEMA 5-15 or equivalent and are also limited to 15
amps in 120V, which means a total of 1800 watts.  The Craftsman-
brand vacuums are sold with NEMA 5-15 plugs.  The wattages and
amperages as advertised contradict the advertised Peak HP
claims.  Thus, the Peak HP Claims cannot be true.[11]

Federal laws, governmental agencies, state and local laws,
common distribution and purchasing contracts, and potential
safeguards against tort liability "all but require products
manufacturers and distributors, such as [d]efendant, to test
their device with a National Register Testing Laboratory
("NTRL") for safety."  A common NTRL is UL.  When a device is
sent to UL, it is rigorous tested to become UL Listed.  A

---

[10]   Montgomery and Wood allege that "[t]hese power ratings are for the
circuit as a whole."  The use of other devices would further reduce the
amount of power before blowing the breaker.  Montgomery and Wood further note
that some circuits in the U.S. offer 20 amps which would be equivalent to
2400 watts of power for use in refrigerators and other high-draw devises;
however, they have a different plug and outlet which is not found on the
vacuums at issue.
[11]   As an example, Montgomery and Wood indicate that 6.5 Peak HP vacuum lists
a wattage of 1440, which equals 12 amps at 120V which is significantly less
than the 4849 watts a true 6.5 horsepower motor requires.

company can then put the UL mark on its product to show
certification.  One such UL standard for certification is under
"UL 1017 STANDARD FOR SAFETY Vacuum Cleaners, Blower Cleaners,
and Household Floor Finishing Machines."

All of the Craftsman-branded vacuums "are uniformly UL
listed and marked, and thus tested under UL 1017."  UL's safety
tests limit the wattage and amperage.  UL 1017 5.2 tests vacuums
in conditions of normal load which is "load which approximates
as closely as possible the most severe conditions of normal use
but not a deliberate overload."  (emphasis in first amended
complaint).  UL 1017 5.7 requires that the "input current in
amperes (and watts, if so marked) to the appliance shall not
vary from the marked current (an wattage) rating by more than
plus 10% and minus 15% when the equipment is operated under
normal load, [the most severe conditions of normal use but is
not a deliberate overload,] condition."

Montgomery and Wood allege that the Craftsman-branded
vacuums "do not, and will never be able to, meet the power
requirements required for the [v]acuums' advertised horsepower"
because of the: 1) inability for household circuits to provide
the necessary power; 2) inability for household receptacles to
provide the necessary power; 3) defendant's own wattages and
amperages not meeting the power requirements; and 4) UL testing,
certification, and marking demonstrate that the maximum

operating power of the device, under any conditions, does not
meet the necessary power requirement.

## STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must grant a
motion to dismiss if a plaintiff fails to establish a claim upon
which relief may be granted.  Such a motion "assess[es] the
legal feasibility of the complaint, [but it does] not . . .
assay the weight of the evidence which might be offered in
support thereof."  Ryder Energy Distribution Corp. v. Merrill
Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).

When ruling on a 12(b)(6) motion, the court must "accept
the facts alleged in the complaint as true, and draw all
reasonable inferences in favor of the plaintiff."  Broder v.
Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 556
U.S. at 678; see also Twombly, 550 U.S. at 555 (stating that a
complaint must provide more than "a formulaic recitation of the

8

elements of a cause of action"). "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Iqbal, 556 U.S. at 678.

The court may consider only those "facts stated on the face
of the complaint, in documents appended to the complaint or
incorporated in the complaint by reference, and to matters of
which judicial notice may be taken." Allen v. WestPoint-
Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). "Dismissal
under Federal Rule of Civil Procedure 12(b)(6) is appropriate
when 'it is clear from the face of the complaint, and matters of
which the court may take judicial notice, that the plaintiff's
claims are barred as a matter of law.'" Associated Fin. Corp.
v. Kleckner, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting
Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000))).

## DISCUSSION

## I.   Materials Outside of the Complaint

Stanley has referred to materials outside of the complaint
to make arguments in its motions to dismiss. Therefore, as a
preliminary matter, the court addresses which materials it may
consider in a Rule 12(b)(6) motion to dismiss without converting
the motion into a motion for summary judgment pursuant to Rule
56.

"[W]hen matters outside the pleadings are presented in
response to a 12(b)(6) motion," a district court must either

9

"exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Friedl v. City of N.Y., 210 F.3d 79, 83-84 (2d Cir. 2000) (citing Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988)).  However, not all documents considered by the court that are outside of the complaint require the court to convert the motion to dismiss into a motion for summary judgment.  For example, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156-7 (2d Cir. 2006) (citing Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." L-7 Designs Inc., 647 F.3d at 422 (citations omitted).

    (a)  Judicial Notice

    First, Stanley argues that Montgomery and Wood failed to mention in their complaint the clarifying language on the

packaging and labeling of the vacuums that they purchased, which
resulted from a previous nationwide class action settlement and
provided for future relief to consumers.[12]  Specifically, Stanley
argues that the court may take judicial notice of the documents
publicly filed in In re Shop-Vac MDL and consider them on its
Rule 12(b) motion to dismiss "because they are 'matters of
public record.'"[13]

Montgomery and Wood respond that, "as a matter of contract
law, a settlement cannot bind nonparties."  Specifically,
Montgomery and Wood respond that "the settlement in In re Shop-
Vac[,] one involving third parties and settling claims relating
solely to the Shop-Vac brand[,] is irrelevant for the purposes
of this case."  They state that "[j]udicial notice is further
unwarranted because 'it is improper for the [c]ourt to consider
extrinsic evidence attached to a motion to dismiss without
converting the motion to dismiss to a motion for summary
judgment[.]'"

---

[12]   Stanley notes that such language was approved by a judge for the United
States District Court for the Middle District of Pennsylvania as the result
of a previous nationwide class action settlement and which provided for
future relief to consumers.  Stanley attached to its motion the publicly
filed documents for In re Shop-Vac Marketing and Sales Practices Litig., MDL
No. 2380 Case No. 4:12-md-02380-YK (M.D. Pa.).

[13]   Stanley further argues that the clarifying language was "on the labeling
of all shop-Vac and Cleva-made wet/dry vacuums during 2018."  As a result,
Stanley argues that Montgomery and Wood's claims "fail on the merits as a
matter of law."

"The courts have taken judicial notice of settlement agreements filed in other cases." Shakur v. Bruno, No. 3:12cv984(SRU), 2014 WL 645028, at *1 (D. Conn. Feb. 18, 2014) (citations omitted). "Where the settlement agreement was not filed, the courts have taken judicial notice of the agreement only where the plaintiff has referenced the other case, or where the plaintiff has knowledge of the document and the document was integral to the plaintiff's claims." Id. (citations omitted).

In this case, the settlement agreement and related documents were publicly filed in the In re Shop-Vac MDL case.[14] The agreement is relevant and integral to the claims alleged in Montgomery and Wood's complaint. Montgomery and Wood allege that Stanley misrepresented its product on the labeling and packaging. Montgomery and Wood both allege that, prior to their purchases, they "reviewed the product's labeling and packaging" and they chose the Craftsman vacuum over comparable models relying on the labeling and packaging. Therefore, the court may consider the fact that there was previous class action litigation regarding the "Peak HP Claim[s]" which resulted in a settlement requiring explanatory language on the packaging to clarify the "Peak HP Claims." Stanley indicates that the

---

[14] As noted by Stanley, Shop Vac is one of the manufacturers of their Craftsman-brand vacuums.

clarifying language was on the boxes purchased by Montgomery and Wood, which the plaintiffs do not dispute.  Yet, Montgomery and Wood left out any mention of the clarifying language in their complaint and displayed photos that are cropped and do not show the clarifying language.  Therefore, the court concludes that it may consider the fact that there is clarifying language without considering the truth of the matters asserted in that litigation, since the court concludes *supra* that the packaging and labeling on the boxes that they purchased is integral to Montgomery and Woods complaint.

> (b)  Packaging and Labeling

Next, Stanley argues that Montgomery and Wood, realizing that the clarifying language disposed of their claims, "conspicuously omit from their pleading the actual language on the packaging of the products they bought" and asks the court to consider the full packaging of the vacuums at issue because the packaging is integral to the plaintiffs' claim.

Montgomery and Wood respond that "it is improper for the court to take judicial notice of what [the] defendant purports to be the complete packaging of the [v]acuums. . . ."  They further respond that they have sufficiently alleged that a reasonable consumer would be misled by the packaging and that a disclaimer cannot cure a misrepresentation made to consumers.

"[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint." Chamber v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "[M]ere notice or possession is not enough." Daniel v. Mondelez International, Inc., 287 F. Supp. 3d 177, 183 (E.D.N.Y. 2018) (citation omitted). It also, "must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document and [i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. (citation omitted; internal quotation marks omitted). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, (2d Cir. 1991). Allowing the court to consider documents integral to the complaint, "thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

Montgomery and Wood incorporated by reference the written content of two vacuum packages (boxes) and, in fact, included

14

partial photographs of the vacuum packaging in their complaint.
The complaint not only relies heavily upon the "Peak HP Claims"
on the vacuum packaging, all of Montgomery and Wood's claims are
based on an alleged misrepresentation by Stanley regarding the
"Peak HP Claims" on the packaging.  Montgomery and Wood relied
on the vacuum packaging in framing their allegations of
misrepresentation by Stanley.  Therefore, the labeling and
packaging is integral to their claims.

As noted by Stanley, Montgomery and Wood left out any
discussion of the explanatory language regarding "Peak HP claim"
in their complaint.  They also cropped out all the explanatory
language on the box in the photos in their complaint, which they
do not even allege to be representative of their boxes.[15]

Montgomery and Wood had notice of this explanatory
language.  They both alleged that they purchased their vacuums
in stores[16], "reviewed the product's labeling and packaging," saw

---

[15]   Not only are these photographs of the boxes partial and cropped,
Montgomery and Wood do not allege in the complaint that the photos are
representative of the packaging on the vacuums that they purchased.  Instead,
they claim that they are examples seen "in retail packaging on shelves at Ace
Hardware and Lowe's."  Neither party purchased their products at Ace Hardware
and there are no pictures of the model that was purchased by Woods.  They
failed to make any allegations related to the boxes from their product, other
than to state the Peak HP ratings.
[16]   Montgomery and Woods also make allegations and show images from online
retailer's websites.  Since neither Montgomery nor Woods purchased their
product from an online retailer or allege that they assessed their purchase
from an online retailer, these allegations are not relevant to their claims.

the vacuums Peak HP rating, and chose the Craftsman-brand vacuum over comparable models relying on the labeling and packaging.

They do not allege in their complaint or dispute in their motion papers that the explanatory language was on their packaging; nor do they dispute that the packaging attached to Stanley's motion to dismiss is a complete representation of the product packaging on the products that they purchased.  Instead, Montgomery and Wood argue in a footnote of their response that it is "totally unclear whether the packaging attached to Defendant's declarations is a complete representation of every exemplar of the product packaging on every product sold during the class period."[17]

Because at this time there is no certification as class action lawsuit, Wood and Montgomery need to demonstrate that they have standing to bring the claims on behalf of the class. "If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim."  Goldberger v. Bear, Stearns & Co., Inc., No. 98 Civ. 8677(JSM), 2000WL 1886605, at *1 (S.D.N.Y Dec. 28, 2000)

---

[17]    The court notes that Montgomery and Wood raised this argument only in a footnote. (plaintiff's opposition, fn. 1, page 5).  "[A]rguments [that] appear only in footnotes are not properly raised, and the court is under no obligation to consider them."  Weslowski v. Zugibe, 96 F. Supp. 3d 308, 314 (S.D.N.Y 2015) (collecting cases).  Even assuming the court were to consider this argument, it does not dispute the disclaimer was on their packaging.

(citations omitted).  Therefore, the language on the packaging,
including any explanatory language, is integral to Montgomery
and Wood's claims which are based on an alleged
misrepresentation by Stanley regarding the Peak HP claims on the
packaging of their purchased vacuums.[18]  The court notes that a
"[p]laintiffs' failure to include matters of which as pleaders
they had notice and which were integral to their claim—and that
they apparently most wanted to avoid—may not serve as a means of
forestalling the district court's decision . . . ."  L-7 Designs
Inc., 647 F.3d at 422 (citation omitted).

    The court concludes that the clarifying language on the
boxes purchased by Montgomery and Wood can be considered by the
court in a Rule 12(b)(6) motion without converting the motion to
a motion for summary judgment.

    As such, the court will address the merits of Montgomery
and Wood's claims, given the courts consideration of the
publicly filed judicial documents and the integral packaging
materials without converting the motion to dismiss into a motion
for summary judgment.

II. **Lack of Standing**

    (a) Standing for Injunctive Relief

---

[18]   For the first time, Montgomery and Wood argue in their opposition that
the clarifying language does not insulate Stanley from liability and does not
cure the misrepresentation.

First, Stanley argues that Montgomery and Wood "lack standing to pursue injunctive or declaratory relief unless they affirmatively demonstrate some likelihood of future harm." Specifically, Stanley argues that they failed to allege the likelihood of future or continuing harm because they already purchased their vacuums, do not allege that they would purchase again, and could not plausibly allege that they would be misled about the Peak HP rating in the future.

Montgomery and Wood respond that Stanley's argument that they lack standing to pursue injunctive or declaratory relief unless they affirmatively demonstrate future harm is "wrong." Specifically, they argue that federal courts have held that "injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer" have standing.[19]

"A plaintiff seeking to represent a class must personally have standing.  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239

---

[19]   The plaintiffs cite to Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that, in the absence of a second circuit decision on this issue, the plaintiff may pursue an injunction in a putative class action at the motion to dismiss stage under New York consumer protection statutes even with no claim of probable future injury). However, this case is not supported by other district court cases and binding second circuit cases.  See Greene, 262 F. Supp. 3d. at 56 (collecting cases) (holding that the plaintiffs cannot assert third-party standing on behalf of would-be consumers due to false advertising of a product because it "is not the type of close relationship courts have recognized as creating a prudential exception to third-party standing rules"); Nicosia, 834 F.3d at 239; Kommer v. Bayer Consumer Health, a division of Bayer AG, 710 F. App'x 43, 44 (2d Cir. 2018) (summary opinion).

(2d Cir. 2016) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996).
"[A] plaintiff seeking injunctive relief 'must show the three
familiar elements of standing: injury in fact, causation, and
redressability.'" <u>Greene v. Gerber Products Co.</u>, 262 F. Supp.
3d 38, 54 (E.D.N.Y 2017) (citing <u>Cacchillo v. Insmed</u>, Inc. 638
F.3d 401, 404 (2d Cir. 2011). "There is no exception to
demonstrating future injury when the plaintiff is pursuing a
class action." <u>Albert v. Blue Diamond Growers</u>, 151 F. Supp. 3d
412, 418 (S.D.N.Y. 2015) (citing <u>Simon v. E. Kentucky Welfare
Rights Org.</u>, 426 U.S. 26, 40 n. 20 (1976). "In order to meet
the constitutional minimum of standing to seek injunctive relief
[the plaintiff] must carry the burden of establishing that he
has sustained or is immediately in danger of sustaining some
direct injury as the result of the challenged official conduct."
<u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004) (quoting <u>City
of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-2 (1983) (internal
quotation marks omitted).

"Plaintiffs lack standing to pursue injunctive relief where
they are unable to establish a 'real or immediate threat.'"
<u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 239 (2d Cir. 2016)
(quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-2
(1983); <u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004).
"Although past injuries may provide a basis for standing to seek
money damages, they do not confer standing to seek injunctive

relief unless the plaintiff can demonstrate that [he/]she is likely to be harmed again in the future in a similar way." Nicosia, 834 F.3d at 239; see also Shain, 356 F.3d at 215 (stating that past injuries to not satisfy the injury requirement to seek injunctive relief). While there are "well-recognized prudential exceptions to the injury-in-fact requirement that permit third-party standing where the plaintiff can demonstrate 1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests[,]" Montgomery and Wood do not meet these exceptions. See Greene, 262 F. Supp. 3d at 55 (collecting cases and explaining the prudential exceptions to the injury-in-fact requirement). "[T]hird-party standing is generally limited to situations where constitutional rights are at risk and the relationship between a class representative and would-be consumers is not the type of close relationship courts have recognized as creating a prudential exception to the third-party standing requirement." Daniel v. Mondelez International, Inc., 287 F. Supp. 3d 177, 185 (E.D.N.Y 2018) (citing Greene, 262 F. Supp. 3d at 55-6).

Here, Montgomery and Wood failed to make any allegations in their first amended complaint as a basis for future non-monetary damages. They allege that they and the class has been "injured and harmed because: (a) they would not have purchased the

[v]acuums on the same terms if they knew that the HP Claims were not true; (b) they paid a premium for the [v]acuums due to the HP claims; and (c) the [v]acuums do not have the characteristics, uses, benefits, or quantities promised in that the HP can never be achieved in actual use."  Montgomery and Woods further allege that, as a result of the misrepresentations, they and the subclasses have suffered and continue to "suffer economic injury" and the misrepresentations resulted in "consumer injury or harm to the public interest." As such, they are attempting to assert standing solely based on consumers that have yet to be identified.

The court concludes that Montgomery and Wood lack standing to pursue injunctive relief because they failed to show that they are "likely to be harmed again in the future in a similar way."  Therefore, the court grants Stanley's motion to dismiss Montgomery and Wood's request for injunctive relief.

(b)   <u>Individual Standing</u>

Next, Stanley argues that Montgomery and Wood must demonstrate that they have individual standing by alleging and showing "that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Specifically, Stanley argues that, "[b]ecause the Court considers only the named plaintiffs at this stage, . . .

dismissal of Montgomery and Wood's claims would thus result in dismissal of the entire case."

Montgomery and Wood respond that Stanley is "conflat[ing] Article III standing requirements with class certification requirements."  Specifically, they argue that "Article III standing and class standing are different issues that require separate consideration. . . ."  They further argue that "class standing is often considered at the class certification stage of the litigation" and Stanley's argument that they "lack Article III standing as to products that they did not purchase . . . is premature on a motion to dismiss."

In order to satisfy standing, "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  Kacocha v. Purina Petcare Company, No. 15-cv5489(KMK), 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016).  That is because "until certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification . . . because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 616 (7th

Cir. 2002)(citation omitted); see also Police and Fire

Retirement System of City of Detroit v. IndyMac MBS, Inc., 721

F.3d 95, fn. 22 (2d Cir. 2013)(quoting Morlan); Fondacaro v.

Solomon & Solomon, P.C., No. 1:17cv01053 (BKS/DJS), 2018 WL

4054075, fn. 4 (N.D.N.Y. 2018)(quoting Morlan).

Because there is no certification as a class action lawsuit

at this time, Wood and Montgomery need to demonstrate that they

have standing to bring their individual claims on behalf of the

class.  "If the named plaintiffs have no cause of action in

their own right, their complaint must be dismissed, even though

the facts set forth in the complaint may show that others might

have a valid claim."  Goldberger v. Bear, Stearns & Co., Inc.,

No. 98 Civ. 8677(JSM), 2000WL 1886605, at *1 (S.D.N.Y Dec. 28,

2000) (citations omitted).  As such, the court addresses the

merits of each of the plaintiff's claims to determine if they

have a cause of action in their own right, given the courts

consideration of the publicly filed judicial documents and the

integral packaging materials.

## III. **Merits of the Plaintiff's Claims**

As an initial matter, Stanley argues that all the

plaintiff's individual claims fail because "the clarifying

language prevents the possibility of confusion over the Peak

Horsepower term."  Specifically, Stanley argues that not only

did Montgomery and Wood ignore the clarifying language on the

packages from the previous class action settlement, they also
misrepresented the relevant packaging.

Montgomery and Wood respond that whether a reasonable
consumer would be misled about the Peak HP claim on the
packaging is a question of fact that cannot be resolved on a
Rule (12)(b)(6) motion to dismiss.  Specifically, Montgomery and
Wood respond that they alleged sufficient facts in their first
amended complaint to "adequately allege that a reasonable
consumer would be misled by the [v]acuums' false and misleading
horsepower ratings . . . ."

Because Montgomery and Wood filed a class action lawsuit
based on claims of misrepresentation of Peak HP claims without
mentioning and discussing the impact of explanatory language on
the labeling and packaging in their first amended complaint,
Montgomery and Wood submit a lengthy argument in their
opposition to Stanley's motion to dismiss arguing why the
explanatory language, which they term inconspicuous disclaimers,
does not cure the misrepresentation made to consumers by Stanley
regarding the Peak HP claim.  A claimant cannot "forestall" a
court's decision by conveniently leaving out information from
written material which is incorporated by reference in its
complaint and which is integral to their claims. See L-7 Designs
Inc., 647 F.3d at 422.  Nor can the court consider these new
arguments by Montgomery and Wood.  "It is well-settled that a

24

plaintiff 'cannot amend [his] complaint by inserting new facts or theories for the first time in opposition to a motion to dismiss.'" <u>Peacock v. Suffolk Bus Corp.</u>, 100 F. Supp. 3d 225, 231 (E.D.N.Y 2015) (citations omitted); <u>see also</u> <u>Wilchfort v. Knight</u>, 307 F. Supp. 3d 64, n. 13; <u>Moses v. Apple Hosp. REIT Inc.</u>, No. 14-cv-3131, 2016 WL 8711089, at *6 (E.D.N.Y. Sept. 30, 2016); <u>Fadem v. Ford Motor Co.</u>, 352 F.Supp.2d 501, 516 (S.D.N.Y. 2005), <u>aff'd</u>, 157 F. App'x. 398 (2d Cir. 2005).

As such, the court addresses the merits of Montgomery and Wood's claims based only on the allegations in the complaint without considering the arguments made for the first time in Montgomery and Wood's opposition.

(a) <u>Violation of New York General Business Law §§ 349 and 350</u>

Stanley argues that "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  Specifically, Stanley argues that, in order to prove that the conduct was materially misleading, Wood needs to show that "a reasonable consumer acting reasonably under the circumstances" would have been misled.  Stanley further argues that "[n]o reasonable consumer . . . could not have reviewed the product packaging without seeing the [dagger] symbol or the connecting [c]larifying language."

Wood responds that he "adequately alleged [in their first
amended complaint] that a reasonable consumer would be misled by
the '[v]acuums' false and misleading horsepower ratings because
such representations are highly material to consumers and serve
to differentiate the vacuums form competitors' vacuums.'"  Wood
further responds that he relied on that labeling to choose
Stanley's vacuum over comparable models and did not receive the
benefit of their bargain because the product did not produce
anywhere near the purported horsepower.

New York General Business Law ("GBL") § 349 prohibits
"[d]eceptive acts or practices in the conduct of any business,
trade or commerce or in the furnishing of any service in [New
York]."  N.Y. Gen. Bus. Law § 349.  Section 350 prohibits
"[f]alse advertising in the conduct of any business, trade or
commerce or in the furnishing of any service in [New York]."
"To assert a claim under either section, 'a plaintiff must
allege that a defendant has engaged in (1) consumer-oriented
conduct that is (2) materially misleading and that (3) [the]
plaintiff suffered an injury as a result of the allegedly
deceptive act or practice.'"  Daniel v. Mondelez International,
Inc., 287 F. Supp. 3d 177, 186 (2018) (citing Orlander v.
Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citations
omitted)).  The standard for recovery is identical between the
two, except that to prevail on a claim under § 350, "a plaintiff

must demonstrate reliance on defendants' false advertising[,]"
which is not required under § 349. Id. at 165 and n. 6.  "Under
New York law, a material misrepresentation is one that is
'likely to mislead a reasonable consumer acting reasonably under
the circumstances.'"  Daniel v. Mondelez International, Inc.,
287 F. Supp. 3d 177, 188 (2018) (citation omitted).

In this case, the parties to not dispute that Stanley
engaged in consumer-oriented conduct.  Instead, the dispute is
over whether the packaging is materially misleading and whether
Wood suffered an injury as a result.

In support of his claim, Wood alleged, on behalf of himself
and the New York subclass, that Stanley misrepresented that the
vacuums output a particular horsepower as stated on its HP
claims which was "misleading in a material way because they
fundamentally misrepresent[ed] the characteristics of Craftsman
Vacuums to induce consumers to purchase same," in violation of
New York's General Business Law.  Wood's further alleged that,
as a result, they had damages.[20]

Accepting all allegations as true and drawing all
reasonable inferences in favor of Montgomery and Wood, the court
concludes that they failed to state a claim that is plausible on
its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A

[20]   Wood seeks to recover, on behalf of himself and the New York subclass,
the greater of his actual damages or fifty dollars, three times actual
damages, and reasonable attorney's fees.

claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662.

While Montgomery and Wood alleged the elements of a claim under New York General Business Law §§ 349 and 350, they failed to support their claim with more than conclusory statements.  As noted by Iqbal, 556 U.S. at 678, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  See also Twombly, 550 U.S. at 555 (stating that a complaint must provide more than "a formulaic recitation of the elements of a cause of action").  Wood's allegations conflate the term "Peak HP" with horsepower and focus on the fact that the vacuum scientifically can never reach the horsepower, or Peak HP claim.  However, taking into consideration the clarifying language on the packaging, which indicates that in actual use the wet/dry vacuums do not operate at the peak horsepower shown, Montgomery and Wood failed to provide sufficient factual support for their conclusory allegation that a reasonable consumer would have been misled by the Peak HP rating.  "The applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by the Defendant's action."  Weinstein v. eBay, Inc., 819 F. Supp. 2d 219, 228 (S.D.N.Y 2011).  The court notes that "[a] reasonable consumer does not lack common sense."  Daniel v.

Mondelez International Inc., 287 F. Supp. 3d 177, 193 (S.D.N.Y 2018) (citation omitted).  The primary evidence of misrepresentation of the Peak HP claim is the advertisement itself and "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  Fink v. Time Warner Cable, 714 F.3d at 741.  "[T]he presence of a disclaimer or clarifying language may defeat a claim of deception."  Id.  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted).

Wood's allegation that he reviewed and relied on the labeling and packaging to choose his vacuum over comparable models, without discussing or even mentioning the clarifying language on the packaging, is fatal to his argument that a reasonable consumer would have been misled.  Wood made no allegations in the amended complaint indicating how he believed that the 12 Gallon Wet/Dry Vac" with 5.5 Peak HP he purchased could perform 5.5 horsepower, given the clarifying language on the packaging.  Wood did not include a full description or picture of the advertising on the packaging of the 5.5 Peak HP

product that he purchased.[21]  He also did not argue that such
language was absent from his packaging.

Possibly realizing that his omission undermines his claim,
Wood attempts to remedy this by arguing in the opposition to the
motion to dismiss that inconspicuous disclaimers do not cure the
misrepresentation made to consumers.  However, "[s]uch claims
are not properly before the Court and the Court need not
consider them."  Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d
at 231 (referring to new facts or theories asserted for the
first time in an opposition to a motion to dismiss).  Wood
failed to allege in the amended complaint how a reasonable
consumer, who reviewed the packaging and labeling in order to
purchase the vacuum over other brands, would not have considered
the clarifying language regarding the Peak HP claim.  "A
plaintiff who alleges that he was deceived by an advertisement
may not misquote or misleadingly excerpt the language of the
advertisement in his pleadings and expect his action to survive
a motion to dismiss or, indeed, to escape admonishment."  Fink
v. Time Warner Cable, 714 F.3d at 741.  Therefore, under the
circumstances in this case, the court concludes that Wood's
"claim lacks the facial plausibility necessary to survive a
motion to dismiss."  Id.  As such, Wood failed to sufficiently

---

[21]   The pictures provided are of "retail packaging on shelves at Ace Hardware
and Lowe's."

plead that Stanley's Peak HP statement is a material
misrepresentation which is likely to mislead a reasonable
consumer acting reasonably under the circumstances.  Therefore,
the court grants Stanley's motion to dismiss Wood's amended
complaint as to N.Y. Gen. Bus. Law § 349 and 350, counts VII and
VIII.

   (b)  <u>Violation of the Virginia Consumer Protection Act</u>

   Stanley argues that the Peak HP "rating on the packaging
label is not a misrepresentation[;]" nor can Montgomery plead
justifiable reliance, as required under the Virginia Consumer
Protection Act ("VCPA"), due to the clarifying language on the
packaging of the product he allegedly purchased.  Specifically,
Stanley argues that the clarifying language on the packaging
"defined the [Peak HP] term explicitly" and Montgomery "should
not be allowed to plead a claim based on their failure to read
the product packaging label."

   Montgomery responds that they have alleged justifiable
reliance, and the disclaimer "does not 'provide a shield for
liability for the deception'" and "cannot negate Plaintiff
Montgomery's VCPA claim."  Specifically, Montgomery responds
that he relied on the Peak HP claims, saw them prior to and at
the time of purchase, understood them as representations and
warranties that they are capable of producing the Peak HP during
normal use and operation, and "relied on these representations

31

and warranties" in deciding to purchase the Craftsman vacuum. He further responds that he alleged misrepresentation by stating that Stanley "misleads consumers into believing that the Vacuums can in fact generate the claimed horsepower, even though these claims are illusory and can never be obtained in actual use."

The Virginia Consumer Protection Act ("VCPA"), §§ 59.1-200 et seq., prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction" and enumerates specific prohibited acts or practices.

In support of his claim, Montgomery alleged in the amended complaint that Stanley is a "supplier" and that the sale of the vacuums constituted "consumer transaction," both as defined by VCPA § 59.1-198.  On behalf of himself and the Virginia subclass, Montgomery further alleged that Stanley violated several sections of VCPA §§ 59.1-200 (A).[22]  Montgomery further

---

[22]  Specifically, Montgomery alleged that pursuant to: a) VCPA § 59.1-200(A)(5), Stanley "misrepresent[ed] that goods or services had certain quantities, characteristic, ingredients, uses, or benefits" by advertising the Peak HP claims when it knew these claims were false; b) VCPA § 59.1-200(A)(6), Stanley "misrepresent[ed] that goods or services are of a particular standard, quality, grade, style, or model" by advertising the Peak HP claims when it knew these claims were false; c) VCPA § 59.1-200(A)(8), Stanley "advertised goods or services with intent not to sell them as advertised" by selling the vacuums while advertising the Peak HP claim and without accurately stating the true horsepower; and d) VCPA § 59.1-200(A)(14),  Stanley used "deception, fraud, false pretense, false promise, [and] misrepresentation in connection with a consumer transaction" by willfully and intentionally induced Montgomery and the Virginia subclass by deceiving them with inaccurate Peak HP claims that Stanley knew were false.

alleged reliance on the Peak HP claims in the purchase of the
vacuums and that he suffered an actual loss because the value is
"substantially lower" based on the actual horsepower.

For the same reasons that the court dismisses Wood's claim
pursuant to pursuant to N.Y. Gen. Bus. Law §§ 349 and 350, the
court dismisses Montgomery's claim under the Virginia Consumer
Protection Act ("VCPA"), §§ 59.1-200.  While Montgomery has
alleged the elements of a cause of action under VCPA § 59.1-200,
he has failed to allege sufficient facts to establish a
misrepresentation or show deception or fraud given the
clarifying language. see also Twombly, 550 U.S. at 555.  A
complaint must provide more than "a formulaic recitation of the
elements of a cause of action." Twombly, 550 U.S. at 555.
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
Iqbal, 556 U.S. at 678.  Montgomery argues in his opposition to
the motion to dismiss that the disclaimers do not cure a
misrepresentation, however, "[s]uch claims are not properly
before the Court and the Court need not consider them."  Peacock
v. Suffolk Bus Corp., 100 F. Supp. 3d at 231 (referring to new
facts or theories asserted for the first time in an opposition
to a motion to dismiss).  Montgomery failed to allege sufficient
facts to support his allegation that Stanley misrepresented the
"qualities and characteristics" of the vacuum, given the

clarifying language.  In addition, Montgomery failed to allege sufficient facts to support his allegation that Stanley "advertised the vacuums with intent not to sell them as advertised" or used "deception, fraud, false promise, [and] misrepresentation."  Therefore, the court grants Stanley's motion to dismiss Montgomery's claim under the VCPA § 59.1-200, count VI.

    (c)  <u>State/Common Law Claims</u>

As a preliminary matter, Montgomery and Wood argue that it is premature for the court to determine choice-of-law at the motion to dismiss stage of the proceedings.  However, the cases cited by the plaintiff do not preclude the court from deciding this issue at this time.[23]  In this case, no additional facts are needed to determine choice-of-law as to Montgomery and Wood's claims at this time.  "[W]here . . . the relevant facts are sufficiently clear, courts in this Circuit have engaged in choice-of-law analysis at the motion to dismiss stage." <u>Patel</u>

---

[23]  <u>See</u> <u>Bristol-Meyers Squibb Co. v. Matrix Laboratories Limited</u>, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) (concluding that the district court improperly dismissed the case because it involved an agreement between the defendant and a third party in which the plaintiff had only limited information); <u>NovaFund Advisors, LLC v. Capitala Group, LLC</u>, No. 3:18-cv-1023 (MPS), 2019 WL 1173019 at 13 (D. Conn. Mar. 13, 2019)(concluding that it is premature where the analysis of the factors turns on numerous disputed facts); <u>N. Am. Tech. Servs., Inc. v. V.J. Techs., Inc.</u>, No. 10 CV 1384 AWT, 2011 WL 4538069, at *2 (D. Conn. Sept. 29, 2011)(concluding that it is premature because complexity of the case); <u>Stanley Works Israel Ltd. v. 500 Grp., Inc.</u>, 332 F. Supp. 3d 488,499 (D. Conn. 2018) (concluding that it is premature to where "the record does not contain the necessary information to determine where the relationship between the parties was based; where the Settlement Agreement was signed; and where the injury-causing conduct took place").

v. New York Life Ins. Co., No. 11 Civ. 4895(JPO), 2012 WL
1883529, at *3 (S.D.N.Y. 2012).

    "In a diversity action a federal court must apply the
choice of law rules of the forum state." Otis Elevator Co. v.
Factory Mut. Ins. Co., 353 F. Supp. 2d 274, 284 (citing Klaxon
Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 486 (1941)). "In
tort cases, Connecticut generally applies the 'most significant
relationship' test of the Restatement (Second) of Conflict of
Laws." Id. (citation omitted).  The relevant factors considered
are: "(1) the place where the injury occurred; (2) the place
where the conduct causing the injury occurred; (3) the domicile,
residence, nationality, place of incorporation, and business of
the parties; and (4) the place where the relationship, if any,
between the parties is centered." Otis Elevator Co., 353 F.
Supp. 2d at 284.

    In the absence of any argument from Montgomery or Wood to
the contrary, the court weighs the factors articulated in Otis.
Regarding Wood, the conduct and the injury occurred in New York.
Wood alleged that he reviewed the product's labeling and
packaging and purchased the Craftsman vacuum from a Sears retail
store in Massapequa, New York.  He chose the Craftsman-brand
vacuum over comparable models relying on the labeling and
packaging.  Wood also alleged that he resides in Deer Park, New
York.  Wood is also alleging a violation of New York General

Business Law, indicating his recognition that that the conduct
and the injury occurred in New York.  Regarding Montgomery, the
conduct and the injury occurred in Virginia.  Montgomery
reviewed the product's labeling and packaging and purchased the
Craftsman-brand vacuum from a Lowe's retail store in Virginia
Beach, Virginia.  He chose the Craftsman vacuum over comparable
models relying on the labeling and packaging.  Montgomery also
resides in Virginia Beach, Virginia.  Montgomery is also
alleging a violation of the Virginia Consumer Protection Act,
indicating his recognition that that the conduct and the injury
occurred in Virginia.

Therefore, the court concludes that the law of New York
applies to Wood's claims and the law of Virginia applies to
Montgomery's claims.

    i. <u>Express Warranty Claim</u>

Stanley argues that given the judicially approved
clarifying language on the package which indicates that "[i]n
actual use, wet dry motors do not operate at the peak horsepower
shown[,]" Montgomery and Wood failed to plausibly allege an
express warranty that turned out to be inaccurate.
Specifically, Stanley argues that the plaintiff's subjective

understanding of the Peak HP claim and selective reading of the packaging and labeling cannot create an express warranty.[24]

Montgomery and Wood respond that case law supports that a disclaimer does not cure a misrepresentation.  Specifically, they respond that their understanding of the HP claim "is reasonable and comports with the well-known facts of life, the court cannot conclude at this stage that a reasonable consumer would not understand the term . . . to mean horsepower achieved in actual use of the vacuum" citing to In re Shop-Vac, 2014 WL 3557189 at * 2.  They state that their allegations "are plainly sufficient to plead claims for breaches of warranty" and the court "should permit this case to proceed to the discovery phase" on the question of whether a reasonable consumer would believe the Peak HP claims.

Under New York law,[25] "[a]n express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

---

[24]   Stanley further argues Montgomery and Wood failed to allege that they had privity for their purchases at Lowes and Sears under either New York law or Virginia law.  Montgomery and Wood respond that their express warranty claim under Virginia and New York law remain valid because privity is not required to bring a claim for breach of an express warranty. Since the court concludes that Montgomery and Wood failed to plausibly allege an express warranty that was breached, given the clarifying language, the court need not address this issue.
[25]   The plaintiff is not clear regarding whether this claim is under state law or common law.  However, "[s]imilarly, to state a claim for common law breach of warranty, a plaintiff must show that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." Mancuso v. RFA Brands, LLC., 454 F. Supp. 3d 197, 206 (W.D.N.Y. 2020).

bargain.'" Tears v. Boston Scientific Corporation, 344 F.
Supp. 3d 500, 512 (S.D.N.Y 2018) (citing N.Y.U.C.C. § 2-
313(1)(a)). "A successful breach of express warranty claim
requires proof that such an affirmation or promise existed, that
it was breached, and that plaintiff detrimentally relied on the
warranty." Id. (citing Horowitz v. Stryker Corp., 613 F.Supp.2d
271, 285-86 (E.D.N.Y. 2009)). In Virginia, express warranties
by the seller are created by "affirmation of fact or promise
made by the seller to the buyer which relates to the goods and
becomes part of the basis of the bargain creates an express
warranty that the goods shall conform to the affirmation or
promise" or by "[a]ny description of the goods which is made
part of the basis of the bargain creates an express warranty
that the goods shall conform to the description. . . ." See
Bayliner Marine Corp. V. Crow, 257 Va. 121, 126-7 (1999); VA
Code § 8.2-313.

While Montgomery and Wood make specific allegations
regarding why the vacuum can never attain the Peak HP rating on
the packaging, they conflate the term "Peak HP" with
horsepower.[26]  In addition, the clarifying language, which they

---

[26]  In addition to the facts previously alleged, Montgomery and Wood allege
that Stanley "expressly warranted in the HP Claims that the [v]acuums output
between '1.75 Peak HP' to '6.5 HP'" and that the "[v]acuums do not, and
cannot, output the horsepower in the HP [c]laims."  They also allege that the
vacuums "do not have the characteristics, uses, benefits, or quantities as
promised in that the claimed HP can never be achieved in actual use."

failed to mention in their complaint, explains that the Peak HP claim does not mean the vacuum can operate at that horsepower in actual use.  As such, the court concludes that Montgomery and Wood's express warranty claim must fail because the clarifying language on the labeling and packaging explicitly stated that the vacuums do not operate at the peak horsepower shown in actual use.  Because of Montgomery and Wood's exclusion of any mention of the clarifying language in their complaint, they failed to provide any facts to plausibly allege that a reasonable consumer would believe that the Peak HP claim created an express warranty regarding the horsepower of the vacuum in actual use.[27]

Therefore, the court grants Stanley's motion to dismiss Montgomery and Wood's express warranty claims, count I.

### ii.   Implied Warranty of Merchantability

Stanley argues that Montgomery and Wood's implied warranty fails because the vacuums pass without objection in the trade, conform to the description on the box given the clarifying language, and are merchantable.  Specifically, Stanley argues that implied warranty claims focus on "whether a product performs the ordinary functions of that product, not on whether

---

[27]   The court previously concluded, the clarifying language on the labeling and packaging is integral to Montgomery and Wood's claims.  While they now argue in their opposition that a disclaimer does not cure a misrepresentation, that argument is not properly before the court.  See Peacock v. Suffolk Bus Corp., 100 F. Supp. at 231.

the product failed to conform to the promises made" on the packaging and labeling.  Stanley further argues that the promises or affirmations of fact made on the whole packaging and labeling represents exactly what they purchased and Montgomery and Wood failed to make any allegations that the vacuum was not capable of performing its ordinary function or was not fit for its intended purpose based on the complete packaging.  Stanley also argues that both New York and Virginia require privity for a breach of implied warranty claims.

Montgomery and Wood respond that the central issue in Virginia in a breach of implied warranty claims is "whether [the product] conforms to any promises made by the packaging." Specifically, they respond that they did not bargain for a functional vacuum; they bargained for a vacuum with certain specifications regarding power.  Montgomery and Wood concede that privity is required to bring an implied warranty claim under New York law, but argue that is not the case in Virginia.

In a sale of goods, a warranty is implied that the goods will be merchantable.  "To be merchantable, the goods must be such as would 'pass without objection in the trade' and as 'are fit for the ordinary purposes for which such goods are used.'" Bayliner Marine Corp., 257 Va. at 128; see also VA Code Ann. § 8.2-314; N.Y.C.C. § 2-314.  "The first phrase concerns whether a 'significant segment of the buying public' would object to

40

buying the goods, while the second phrase concerns whether the
goods are 'reasonably capable of performing their ordinary
functions.'"   Id.

Montgomery and Wood provided no allegations of fact to
support their conclusory allegations that the vacuums did not
meet the standards of merchantability.[28]  "In order to prove that
a product is not merchantable, the complaining party must first
establish the standard of merchantability in the trade."
Bayliner Marine Corp., 257 Va. at 128.  Montgomery and Wood
failed to do so.  They neither alleged facts establishing the
standard of merchantability in the trade, nor did they allege
any facts establishing that the vacuum was inadequate for their
personal use.  Thus, Montgomery and Wood failed to plausibly
allege that the vacuums they purchased would not pass without
objection in the trade or were not fit for its ordinary use as a
wet/dry vacuum.

---

[28]   In addition to the facts previously alleged, Montgomery and Wood allege
that they and the subclasses purchased the vacuums for personal use.  Stanley
"affixed HP [c]laims to each [v]acuum and impliedly warranted that the
[v]acuums output '1.75 Peak HP' to '6.5 Peak HP.'"  Stanley breached the
warranty because the vacuums "could not pass without objection in the trade
under the contract description, the goods were not of fair average quality
within the description, and the goods were unfit for their intended and
ordinary purpose because the [v]acuums do not, and in fact, could never
output the horsepower claimed. . . ."  They allege that they "did not receive
the goods as impliedly warranted."

Therefore, the court grants Stanley's motion to dismiss
Montgomery and Wood's breach of implied warranty of
merchantability claims, count II.

### iii. Unjust Enrichment

Stanley argues that the unjust enrichment claims fail
because Montgomery and Wood must "plausibly allege that they
conferred a benefit directly upon Stanley'" which they cannot do
because Stanley did not make or sell the vacuums.  Specifically,
Stanley argues that there is no injustice because Montgomery and
Wood received "exactly what the packaging told them they would
receive," given the clarifying language on the package.  Stanley
states that Wood's unjust enrichment claim must be dismissed
under New York law because Wood "alleges an express warranty
that was part of the basis of the bargain" and because an unjust
enrichment claim "is not available where it duplicates, or
replaces, a conventional contract or tort claim."

Montgomery and Wood respond that neither New York nor
Virginia law requires direct dealing, or an actual substantive
relationship with the defendant; instead "[i]t merely requires
that the plaintiff's relationship with a defendant not be too
attenuated."  Specifically, Montgomery and Wood respond that the
court cannot consider Stanley's argument that it did not make or
sell the products because Stanley is asking the court to
consider evidence outside the complaint. They state that Stanley

42

had "significant involvement in the manufacture and marketing of the [v]acuums[,]" and the Craftsman branding is also "incorporated extensively on the product packaging."  Finally, Montgomery and Wood respond that they are not precluded from pleading unjust enrichment in the alternative.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, (2d Cir. 2004).  In Virginia, "[t]o establish a claim of unjust enrichment or quantum meruit, a claimant must satisfy three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." R.M. Harrison Mechanical Corp. v. Decker Mech. Corp. v. Decker Indus., Inc., 2008 WL 10669311 at *3, (Va. Cir. Aug. 28, 2008) (citing Centex Constr. v. Acstar Ins. Co., 448 F. Supp. 2d 697, 707 (E.D. Va. 2006) (emphasis added)).

The issue with Montgomery and Wood's claim is that the basis of their unjust enrichment claim is a misrepresentation on

the packaging and labeling regarding the Peak HP claims. however.  In light of the clarifying language, Montgomery and Wood failed to sufficiently plead a misrepresentation regarding the Peak HP under either New York or Virginia law.[29]  They did not allege what use was intended and whether the vacuum performed up to the representations on the packaging, as clarified.  Montgomery and Wood failed to show that Stanley was enriched, at their expense, and that equity and good conscience requires the court to not permit Stanley to retain the cost of the vacuum.  As such, the court concludes that Wood's unjust enrichment claim lacks the facial plausibility necessary to survive a motion to dismiss.  Therefore, the court grants Stanley's motion to dismiss Montgomery and Woods unjust enrichment claim, count III.

> iv.  Negligent Misrepresentation

Stanley argues that Montgomery and Wood's negligent misrepresentation claim fails under both Virginia and New York law.  Specifically, Stanley argues that Montgomery and Wood failed to allege a misrepresentation of false statement, given the clarifying language on the packaging and labeling indicating

---

[29]  In addition to the facts previously alleged, Montgomery and Wood allege that Stanley is "unjustly enriched in retaining the revenues" derived from their and the class members purchase of the vacuums because Stanley "misrepresented . . . that the [v]acuums output between '1.75 Peak HP' to 6.5 Peak HP.'"  They allege that they would not have purchased the vacuums "at all, or on the same terms, if the true facts were known."

that "in actual use, wet dry motors do not operate at the peak horsepower shown."  Stanley further argues that Montgomery and Wood cannot plausibly allege justifiable reliance or damage as a result of their reliance based on their subjective reading of the packaging, because courts routinely hold that reliance is unjustified as a matter of law where a misrepresentation is contradicted or clarified in writing.  Stanley also argues that Wood's negligent misrepresentation claim in New York fails because he did not allege a special relationship with Stanley under New York Law.

Montgomery and Wood respond that their complaint alleges facts supporting their reliance on the HP claims and they "clearly allege a misrepresentation."  They further respond that they alleged a misrepresentation by stating that Stanley "mislead[] consumers into believing that the Vacuums can in fact generate the claimed horsepower, even though these claims are illusory and can never be obtained in actual use."[30]

In a footnote, Wood concedes that he "does not allege a 'special relationship' with [Stanley] sufficient to state a claim for negligent misrepresentation under New York law."  As such, the court address only Montgomery's negligent

---

[30]    Montgomery argues in his opposition to the motion to dismiss that the disclaimers do not cure a misrepresentation, however, "[s]uch claims are not properly before the Court and the Court need not consider them."  Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d at 231 (referring to new facts or theories asserted for the first time in an opposition to a motion to dismiss).

misrepresentation claim under Virginia law.  Under Virginia law,
there is no separate claim for negligent misrepresentation;
instead negligent misrepresentation sounds in fraud.  Sun Hotel,
Inc. v. SummitBridge Credit Investments III, LLC, 86 Va. Cir.
189, 2013 WL 8019584 at *3 (2013) (citations omitted).  "The
essence of constructive fraud is negligent misrepresentation."
Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va.
553, 559 (1993).  "[T]he elements of a cause of action for
constructive fraud are a showing by clear and convincing
evidence that a false representation of a material fact was made
innocently or negligently, and the injured party was damaged as
a result of his reliance upon the misrepresentation."  Sun
Hotel, Inc., 2013 WL 8019584 at *3 (citing Mortarino v.
Consultant Eng. Services, 251 Va. 289, 295 (1996)).
"Furthermore, the Supreme Court of Virginia has stated that
negligent misrepresentation is not an exception to the economic
loss rule." Id. (citing Ward v. Ernst & Young, 246 Va. 317, 324
(1993). "[A] plaintiff may not use the tort of negligent
misrepresentation to recover pure economic loss resulting from a
product's failure to perform as expected."  Stoney v. Franklin,
54 Va. Cir. 591, n. 2, 2001 WL 683963 (2001).

　　　For the same reasons that the court dismisses Wood's claim
pursuant to pursuant to N.Y. Gen. Bus. Law §§ 349 and 350 and
Montgomery's claim under the Virginia Consumer Protection Act

46

("VCPA"), §§ 59.1-200, the court dismisses Montgomery's negligent misrepresentation claim.  While Montgomery has alleged the elements of a cause of action for negligent misrepresentation, he has failed to allege clear and convincing evidence that a false representation of a material fact was made, given the clarifying language.[31]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  In addition, Montgomery only alleged an economic loss.  Thus, his negligent misrepresentation claim is barred by Virginia's economic loss doctrine.

Therefore, the court grants Stanley's motion to dismiss Montgomery's negligent misrepresentation claim, count IV.

v.   Fraud

Stanley argues that Montgomery and Wood's fraud claim fails under both Virginia and New York law.[32]  Specifically, Stanley

---

[31]   In addition to the facts previously alleged, Montgomery and Wood allege that Stanley negligently misrepresented the Vacuum output by virtue of the Peak HP claims, it had a duty to disclose the proper horsepower rating, and it knew or should have known that the representations were false or made without knowledge of their truth.  Montgomery and Wood further alleged that they and class members "reasonably and justifiably relied on the claims" and would not have purchased if the true facts were known.

[32]   Stanley argues that Rule 9(b)'s heightened pleading standard applies to Montgomery and Wood's misrepresentation, fraud, and warranty claims because they are all based on the same alleged misrepresentation. See Fed.R.Civ.P. 9(b); see also Meserole v. Sony Corp. of America, Inc., No. 08cv8987(RPP), 2009 WL 1403933, at 3 (S.D.N.Y. 2009) (collecting cases) (noting that Rule 9(b) has been applied to claims of consumer fraud).  However, the court need not apply the heightened pleading standard to conclude that these claims warrant dismissal.

argues that Montgomery and Wood failed to allege a
misrepresentation of false statement, given the clarifying
language on the packaging and labeling indicating that "in
actual use, wet dry motors do not operate at the peak horsepower
shown."  Stanley further argues that Montgomery and Wood cannot
plausibly allege justifiable reliance or damage as a result of
their reliance because justifiable reliance must be pled with
particularity and "their failure to heed the clear disclosures
on the product label forecloses their fraud-based claims."

Montgomery and Wood respond that their complaint alleges
facts supporting their reliance on the HP claims and they
"clearly allege a misrepresentation."  Specifically, Montgomery
and Wood respond that they alleged that the saw the Peak HP
claim prior to and at the time of purchase and understood them
to be representation and warranties that the Craftsman vacuums
can produce the claimed Peak HP during normal use and that they
relied on the representations.

In New York, "[t]o establish fraud, a plaintiff must prove
a misrepresentation or a material omission of fact which was
false and known to be false by the defendant, made for the
purpose of inducing the other party to rely upon it, justifiable
reliance, and injury." Nerey v. Greenpoint Mortg. Funding, Inc.,
40 N.Y.S.3d 510, 512 (citations omitted). In Virginia, "[a]
plaintiff asserting a cause of action for actual fraud bears the

48

burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 557-8 (citing Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (citation omitted)).

Montgomery and Wood failed to allege any facts[33] to show that Stanley's HP claims are a material misrepresentation or false representation of material fact, given the clarifying language on the labeling and packaging, as previously addressed by the court.  In addition, Montgomery and Wood would need to allege sufficient facts that Stanley made such misrepresentation intentionally and knowingly to be false.  Montgomery and Wood have alleged no facts to support this contention.  Montgomery and Wood failed to address the fact that there is a disclaimer regarding the Peak HP claim in drafting their complaint.  A complaint must provide more than "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.

---

[33]   In addition to the facts previously alleged, Montgomery and Wood allege that Stanley knowingly provided false and/or misleading material information and failed to disclose material facts" including that the vacuums "do not, and cannot, output the claimed Peak HP."  They allege that Stanley intended to induce and induced them and the class members to purchase the vacuums causing damages.

As such, they have failed to state a claim for fraud that is plausible on its face.  <u>Iqbal</u>, 556 U.S. at 678.  Therefore, the court grants Stanley's motion to dismiss Montgomery and Woods unjust fraud claim, count V.[34]

**<u>CONCLUSION</u>**

Based upon the foregoing, the defendant's motion to dismiss (document no. 37) is GRANTED.  The court dismisses the plaintiff's complaint.  The clerk is directed to close the case. It is so ordered this 30th day of November 2020, at Hartford, Connecticut.

```
                         __/s/____         ___
```
Alfred V. Covello
United States District Judge

---

[34]   The court has dismissed all of Montgomery and Wood's claims and, therefore, they lack standing to bring this action on behalf of the purported class. "If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim."  <u>Goldberger v. Bear, Stearns & Co., Inc.</u>, No. 98 Civ. 8677(JSM), 2000WL 1886605, at *1 (S.D.N.Y Dec. 28, 2000) (citations omitted).