## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| WILLIAM MONTGOMERY and DONALD WOOD JR., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STANLEY BLACK & DECKER, INC., d/b/a CRAFTSMAN,<br><br>Defendant. | **CASE NO. 3:19-cv-01182-AVC**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs William Montgomery and Donald Wood Jr. bring this action on behalf of themselves and all others similarly situated against Defendant Stanley Black & Decker, Inc., d/b/a Craftsman ("Craftsman" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit regarding Defendant's false and misleading labeling and packaging of Craftsman-brand wet/dry vacuums (collectively, the "Vacuums," as enumerated below).  The labeling and packaging of the Vacuums are replete with false and misleading horsepower ("HP") claims, namely that the Vacuums purportedly produce "1.75 Peak HP," "2.0 Peak HP," "2.5 Peak HP," "3.0 Peak HP," "3.5 Peak HP," "4.0 Peak HP," "4.25 Peak HP," "5.0 Peak HP," "5.5 Peak HP," "6.0 Peak HP," or "6.5 Peak HP" (collectively, the "HP Claims").  Defendant misleads consumers into believing that the Vacuums can in fact generate the claimed horsepower, even though these claims are illusory and can never be obtained in

actual use.  By doing so, Defendant is able to charge a substantial price premium for its Vacuums on account of these fictitious HP Claims.

2.      It is physically impossible for any of the Vacuums to achieve a horsepower output anywhere close to Defendant's HP Claims.  The true horsepower of the Vacuums is only a small fraction of the HP Claims.  Given the wattages and amperages of the Vacuums, and pursuant to testing performed by Underwriters Laboratories ("UL"), a prestigious third-party laboratory specializing in electrical appliances with whom Defendant collaborated prior to the sale of the Vacuums, the total electrical power input possible at any instance for the "5 Peak HP" model is only 1200 watts.[1]  If the electrical power is perfectly converted by the Vacuums' motors, which it is not, the total possible output power of the "5 Peak HP" models is only about 1.609 horsepower (one horsepower equals about 745.7 watts).  This is 67.8% below the claimed "5 Peak HP."  As another example, the total electrical power input possible at any instance for the "6.0 Peak HP" models is only 1260 watts, or about 1.689 horsepower.  This is 71.8% below the claimed "6.0 Peak HP."  In fact, the standard NEMA 5-15 receptacles (*i.e.*, 3-prong wall outlets) found in American homes, and the NEMA 5-15 plugs (*i.e.*, 3-prong plugs) found on the Vacuums, are never rated for more than 1800 watts and 0.5 horsepower, respectively.  Thus, Defendant's HP Claims are unobtainable, under any conditions.

3.      Defendant labeled the Vacuums with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Vacuums from competitors' vacuums.  Here, consumers relied on Defendant's horsepower claims, but only received a small fraction of the horsepower promised and expected.  Consumers,

---

[1] The marked amperage is the electrical power the device draws, even in the "most severe conditions of normal use [that] is not a deliberate overload."  Even with a 10% underestimate that the UL allows, the horsepower output is significantly below the representation on the products' labeling and packaging.  *See infra.*

when purchasing their Vacuums, relied on Defendant's HP Claims to determine the strength and suction ability of their Vacuums compared to others.  This number, which a reasonable consumer assumes is correct, forms a substantial basis of his or her bargain, and in turn allows Defendant to command a price premium for the Vacuums over comparable models.  The higher the horsepower number, the more likely a consumer is to purchase the vacuum over another model, and the more money a consumer is willing to spend.

4.       Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's products, for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) unjust enrichment; (iv) negligent misrepresentation; (v) fraud; (vi) violation of the Virginia Consumer Protection Act, §§ 59.1-200, *et seq.* ("VCPA"); and (vii) violation of New York's General Business Law §§ 349-50.

## THE PARTIES

5.       Plaintiff William Montgomery is a citizen of Virginia, residing in Virginia Beach, Virginia.  In November or December of 2018, Plaintiff Montgomery purchased a Craftsman-brand vacuum, specifically the "Craftsman 16 Gallon Wet/Dry Vac" with "5.0 Peak HP," Model No. CMXEVBCPC1650, from a Lowe's retail store in Virginia Beach, Virginia.  Prior to his purchase of his Craftsman vacuum, Plaintiff Montgomery reviewed the product's labeling and packaging and saw that the vacuum purportedly had a horsepower rating of "5 Peak HP." Plaintiff Montgomery relied on that labeling and packaging to choose his vacuum over comparable models.  Plaintiff Montgomery saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Craftsman vacuum was capable of producing the claimed "5 Peak HP" during normal use and operation.  Plaintiff

Montgomery relied on these representations and warranties in deciding to purchase his Craftsman vacuum.  Plaintiff Montgomery does not recall seeing a disclaimer or any clarifying language prior to purchasing his Craftsman vacuum.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased his Craftsman vacuum on the same terms had he known these representations were not true.  In making his purchase, Plaintiff Montgomery paid a substantial price premium due to the false and misleading HP Claims.  However, Plaintiff Montgomery did not receive the benefit of his bargain, because his Craftsman vacuum, in fact, does not produce anywhere near 5 horsepower. Plaintiff Montgomery also understood that in making the sale, his retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Montgomery further understood that the purchase involved a direct transaction between himself and Defendant, because the purchase came with Defendant's representations and warranties that his Craftsman vacuum produced 5 horsepower.

6.      Plaintiff Donald Wood Jr. is a citizen of New York, residing in Deer Park, New York.  On June 27, 2018, Plaintiff Wood purchased a Craftsman-brand vacuum, specifically the "Craftsman XSP 12 Gallon Wet/Dry Vac" with "5.5 Peak HP," Model No. 12006, from a Sears retail store in Massapequa, New York.  Prior to his purchase of his Craftsman vacuum, Plaintiff Wood reviewed the product's labeling and packaging and saw that the vacuum purportedly had a horsepower rating of "5.5 Peak HP."  Plaintiff Wood relied on that labeling and packaging to choose his vacuum over comparable models.  Plaintiff Wood saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Craftsman vacuum was capable of producing the claimed "5.5 Peak HP" during normal use and operation.  Plaintiff Wood relied on these representations and warranties in deciding to purchase

his Craftsman vacuum.  Plaintiff Wood does not recall seeing a disclaimer or any clarifying language prior to purchasing his Craftsman vacuum.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased his Craftsman vacuum on the same terms had he known these representations were not true.  In making his purchase, Plaintiff Wood paid a substantial price premium due to the false and misleading HP Claims.  However, Plaintiff Wood did not receive the benefit of his bargain, because his Craftsman vacuum, in fact, does not produce anywhere near 5.5 horsepower.  Plaintiff Wood also understood that in making the sale, his retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Wood further understood that the purchase involved a direct transaction between himself and Defendant, because the purchase came with Defendant's representations and warranties that his Craftsman vacuum produced 5.5 horsepower.

7.      Defendant Stanley Black & Decker, Inc. is a Connecticut corporation, with its principal place of business at 1000 Stanley Drive, New Britain, Connecticut 06053.  Stanley Black & Decker manufactures, sells, and/or distributes Craftsman-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of Craftsman wet/dry vacuums, including the Vacuums at issue in this matter.  Stanley Black & Decker manufactured, marketed, and/or sold the Vacuums during the class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Vacuums and the HP Claims was primarily carried out at Stanley Black & Decker's headquarters and facilities within Connecticut.  Stanley Black & Decker's customer relations, technical training center, engineering, marketing, and warranty departments are all located in Connecticut.  Stanley Black & Decker's customer relations department is responsible for fielding customer

complaints and monitoring customer complaints.  Stanley Black & Decker's marketing, warranty, and engineering departments are responsible for the decisions to formulate and disseminate the HP Claims to Craftsman's customers.  The policies, practices, acts and omissions giving rise to this Action were developed in, and emanated from, Stanley Black & Decker's headquarters in New Britain, Connecticut.  Furthermore, the packaging, marketing, labeling, and/or advertising at issue in this matter was developed, approved, and disseminated from Stanley Black & Decker's headquarters in Connecticut.

8.     The Vacuums at issue include all Craftsman models that purport to have "1.75 Peak HP," "2.0 Peak HP," "2.5 Peak HP," "3.0 Peak HP," "3.5 Peak HP," "4.0 Peak HP," "4.25 Peak HP," "5.0 Peak HP," "5.5 Peak HP," "6.0 Peak HP," or "6.5 Peak HP:"

      A.   Vacuums labeled as having "1.75 Peak HP" or greater in the "Light-Duty" category including:  "Craftsman 2.5 Gallon Portable Wet/Dry Vac" and "Craftsman 6 Gallon Portable Wet/Dry Vac;"

      B.   Vacuums labeled as having "2.0 Peak HP" or greater in the "Heavy Duty" category including:  "Craftsman 2.5 Gallon Wall-Mounted Wet/Dry Vac," "Craftsman 12 Gallon Wet/Dry Vac," "Craftsman 16 Gallon Wet/Dry Vac," and "Craftsman 20 Gallon Wet/Dry Vac;"

      C.   Vacuums labeled as having "3.0 Peak HP" or greater in the "Stainless Steel" category including:  "Craftsman 5 Gallon Stainless Steel Wet/Dry Vac" and "Craftsman 8 Gallon Stainless Steel Wet/Dry Vac;"

      D.   Vacuums labeled as having "3.0 Peak HP" or greater in the "Ash Vacuum" category including:  "Craftsman 5 Gallon Ash Vacuum;"

E.  Vacuums labeled as having "3.5 Peak HP" or greater in the "Workshop" category including:  "Craftsman 6 Gallon Wet/Dry Vac" and "Craftsman 9 Gallon Wet/Dry Vac;"

F.  Vacuums labeled as having "4.0 Peak HP" or greater in the "Medium Duty" category including:  "Craftsman 9 Gallon Wet/Dry Vac," "Craftsman 4 Gallon Portable Wet/Dry Vac," and "Craftsman 5 Gallon Wall-Mounted Cleaning System;" and

G.  Vacuums labeled as having "5.5 Peak HP" or greater in the "Extreme Suction Performance" ("XSP") category including:  "Craftsman XSP 12 Gallon Wet/Dry Vac," "Craftsman XSP 16 Gallon Wet/Dry Vac," and "Craftsman XSP 20 Gallon Wet/Dry Vac."

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

10.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Defendant is incorporated and is headquartered in this District.  Moreover, Defendant distributed, marketed, advertised, and sold the Vacuums to retailers and class members, which are the subject of the present complaint, from its headquarters in this District.

<u>**FACTS COMMON TO ALL CLAIMS**</u>

A.  <u>**The Vacuums Are Uniformly Labeled With HP Claims Ranging Between "1.75 Peak HP" To "6.5 Peak HP"**</u>

11.     The Vacuums are uniformly labeled, packaged, marketed, and advertised with the HP Claim, which are representations of horsepower ratings ranging between "1.75 Peak HP" to "6.5 Peak HP."

12.     On online retailers' websites, the HP Claims are uniformly and prominently featured for the Vacuums.  For instance, Amazon.com lists Defendant's HP Claims for the following Vacuums to allow consumers to make a comparative assessment of the various Craftsman wet/dry vacuums available on the market in deciding which product to purchase:[2]



| CMXEVBE17250 | CMXEVBE17612 | CMXEVBE17925 | CMXEVBE17584 | CMXEVBE17590 | CMXEVBE17594 |
| --- | --- | --- | --- | --- | --- |
| 2.5 Gallon | 4 Gallon | 5 Gallon | 6 Gallon | 9 Gallon | 12 Gallon |
| 1.75 Peak HP | 5.0 Peak HP | 5.0 Peak HP | 3.5 Peak HP | 4.25 Peak HP | 6.0 Peak HP |

| CMXEVBE17594 | CMXEVBE17606 | CMXEVBE17595 | CMXEVBE17607 | CMXEVBE17596 | CMXEVBE17656 |
| --- | --- | --- | --- | --- | --- |
| 12 Gallon | 12 Gallon | 16 Gallon | 16 Gallon | 20 Gallon | 20 Gallon |
| 6.0 Peak HP | 6.0 Peak HP | 6.5 Peak HP | 6.5 Peak HP | 6.5 Peak HP | 6.5 Peak HP |

---

[2] https://www.amazon.com/dp/B007C6KT3I/ref=emc_b_5_t (accessed 7/31/2019);
https://www.amazon.com/dp/B07MBHCZ5S/ref=emc_b_5_t (accessed 7/31/2019).

13.     As another example, the Lowe's website sells the "Craftsman 16-Gallon 5-HP Shop Vacuum," with a HP Claim of  "5-HP" in the product name, as well as in the "Product Information" section under the first sub-heading entitled "Description:" [3]





14.     These same representations are incorporated into Defendant's packaging, labeling, and advertising for the Vacuums, as seen below in retail packaging on shelves at Ace Hardware and Lowe's:



15.     Furthermore, Defendant included the HP Claims directly on many of the

Vacuums themselves:






16.     However, these HP Claims are false and misleading, as the actual operating power and functionality of the Vacuums, under any condition, is only a small fraction of these representations.  For instance, Defendant's HP Claims for the following Vacuums are exaggerated by approximately <u>60-85%</u>:

| HP Claim | Actual Max HP | % Difference | Amperage, in Amps (at 120V) | Max Watts (*i.e.*, Amps times 120V) |
|:---:|:---:|:---:|:---:|:---:|
| 1.75 | **0.483** | **-72.4%** | 3.0 amps | 360 watts |
| 3.5 | **1.207** | **-65.5%** | 7.5 amps | 900 watts |
| 4.0 | **1.529** | **-61.8%** | 9.5 amps | 1140 watts |
| 4.25 | **1.336** | **-68.6%** | 8.3 amps | 996 watts |

| HP Claim | Actual Max HP | % Difference | Amperage, in Amps (at 120V) | Max Watts (*i.e.*, Amps times 120V) |
|---|---|---|---|---|
| 5.0 (Model No. CMXEVBE17925)[4] | **0.805** | **-83.9%** | 5.0 amps | 600 watts |
| 5.0 (Model No. CMXEVBE17612) | **1.207** | **-75.9%** | 7.5 amps | 900 watts |
| 5.0 (Model No. CMXEVBCPC1650) | **1.609** | **-67.8%** | 10 amps | 1200 watts |
| 6.0 | **1.690** | **-71.8%** | 10.5 amps | 1260 watts |
| 6.5 | **1.931** | **-70.3%** | 12.0 amps | 1440 watts |

### B.  Horsepower Is A Uniformly Understood And Defined Measure Of Power

17.     Horsepower is a common measure of the work power, or power output, of a device.  Both normal consumers and technical experts understand and use horsepower as a standard unit of measurement for determining the work power of a particular device.  The definition of 1 horsepower converted to electric terms is 745.7 watts.  For example, the equivalent of 2.5 horsepower is 1865 watts, and 6.5 horsepower is 4849 watts.  For an electrical device to output a particular work power, the device must draw, or input, an equivalent power from an electrical source such as a wall outlet or circuit.[5]

### C.  Household Circuits In The United States Are Limited To A Particular Total Power Output In Watts

18.     Similar to a narrow pipe that limits the flow of water, wiring size limits the amount of electricity that can flow before the wire heats up and potentially catches fire.  As such,

---

[4] Defendant manufactures three different Vacuums purporting to have "5.0 Peak HP," but all three products list different amperages and the "Actual Max HP" is therefore different for each product.  In order of appearance, the Vacuums with 5.0 HP Claims listed below refer to the following products: Model No. CMXEVBE17925 refers to "Craftsman 5 Gallon Wall-Mounted Cleaning System;" Model No. CMXEVBE17612 refers to "Craftsman 4 Gallon Portable Wet/Dry Vac;" and Model No. CMXEVBCPC1650 refers to "Craftsman 16 Gallon Wet/Dry Vac."
[5] Real world devices and circuitry are inefficient, and the work power for a device will always be less than the electric power input due to losses.  *See infra*.  That said, the calculations in this complaint are highly conservative and over-estimate available power.

in the United States, residential and commercial wiring is strictly and uniformly regulated. Residential circuits are normally limited to 15 amps in 120V circuits which means that the total wattage (power) available from a standard wall outlet is 1800 watts (*i.e.*, 120V times 15 amps).[6] If a device, or a short circuit, tries to pull more power than the rating, a breaker (fuse) will cut power to the entire circuit.

19.     These power ratings are for the circuit as a whole.  However, in ordinary use, there may be other devices connected and using power, which would further reduce the amount of power for the vacuum before blowing the breaker (fuse).

20.     In the interest of simplicity, and as noted further in the Complaint, the power limit of 1800 watts from a household circuit is grossly exaggerated from actual use because it does not consider efficiency losses in the wiring, motor, or other sources which would reduce the wattage capabilities of the device considerably.[7]  As such, the calculations in this Complaint are highly conservative and over-estimate available power.  Even so, Defendant's Vacuums in fact only deliver a small fraction of the claimed amount.

### D. Household Receptacles In The United States Are Limited To A Particular Total Power Output In Watts

21.     The vast majority of household receptacles (outlets) in the United States are standardized NEMA 5-15, or equivalent, as defined by National Electrical Manufacturers

---

[6] Some circuits in the United States offer 20 amps, which would be equivalent to 2400 watts of power.  These circuits are normally for use by permanent high-draw devices such as refrigerators and have a different plug and receptacle (NEMA 5-20), which is not found on the Vacuums.  In any case, the power specifications for the Vacuums, even ones with the highest claim of "6.5 Peak HP," do not exceed 12 amps by Defendant's own ratings in use on the labeling and packaging.
[7] Electric motors are commonly between 50-90% efficient in converting electric power to work power (horsepower), depending on the load, type, quality, design, and construction of the motor, wiring, circuity, and device.

Association ("NEMA").[8]  NEMA 5-15 plugs and receptacles are limited to 15 amps at 120V, and

thus 1800 watts.[9]  All of the Vacuums are sold with NEMA 5-15 plugs.

22.     Additionally, manufacturers, along with NEMA and the American National

Standards Institute ("ANSI"),[10] routinely publish maximum horsepower ratings for standardized

receptacles.  Not a single 15 amp receptacle has a rating above 0.5 horsepower.

23.     It is unsafe for a device to use more power than the receptacle it is designed for.

As such, manufacturers, including Defendant, could not design a vacuum that would draw more

power than a household outlet is designed to provide.

### E.  Defendant States Contradictory Wattages And Amperages Which Show That The Advertised Horsepower Cannot Be True

24.     In Defendant's brochures, user manuals for the Vacuums, and on the appliances

themselves, values for wattage and amperages are stated.[11]  For example, in connection with

vacuums marked as "6.5 Peak HP," Defendant uniformly lists a wattage of 1440, which equals

12 amps at 120V:[12]

| Item model number | CMXEVBE17595 |
| --- | --- |
| Size | 16 Gallon 6.5 Peak HP |
| Voltage | 120 volts |
| Wattage | 1440 watts |

---

[8] NEMA is the largest trade association of electrical equipment manufacturers in the United States and sets standards for electrical equipment throughout the United States.
[9] For 20 amp circuits NEMA 5-20 plugs and receptacles, or equivalent, are used.  However, Defendant's own power ratings for the Vacuums do not exceed 12 amps at 120V and the Vacuums have NEMA 5-15 plugs.
[10] ANSI (American National Standards Institute) is one of the largest standardization organizations in the world with over 125,000 company members and 3.5 million members.
[11] This amperage is also verified by the UL and is permanently marked on all the Vacuums.  *See infra*.
[12] https://www.amazon.com/dp/B07H84CNG9/ref=emc_b_5_t (accessed 7/31/19).

25.     This is significantly less than the 4849 watts a true 6.5 horsepower motor requires.  As another example, Vacuums marked as "3.5 Peak HP" are listed at 7.5 amps at 120V, which means these Vacuums use a maximum of 900 watts (*i.e.*, 7.5 amps times 120V). This is significantly less than the 2610 watts a 3.5 horsepower motor requires.

26.     <u>The above calculation and comparison can be easily calculated for every model Vacuum, with one, uniform answer: the Vacuums do not – and cannot – produce the claimed horsepower.</u>

**F.   <u>UL Is A Highly Reputable Safety Certification Organization, And UL Certification Is All But Required To Sell Electrical Products In The United States</u>**

27.     Federal laws and governmental regulatory agencies such as OSHA, state and local laws, common distribution and purchasing contracts, and potential safeguards against tort liability, all but require product manufacturers and distributors, such as Defendant, to test their devices with a National Registered Testing Laboratory ("NRTL") for safety.  The most common and ubiquitous NRTL is UL LLC (formally known as Underwriters Laboratories) ("UL"), a non-profit and federally approved NRTL.

28.     UL, as an independent third-party organization, tests millions of products a year in almost every industrial and consumer product category for safety.  UL creates and sets standards for particular components, such as wiring, as well as "UL Standard[s]" for entire product categories.  A UL Standard is a standardized testing regime formulated for a particular type of similar products to ensure uniform safety for all devices.  When a device is sent to the UL, and it passes the rigorous tests, the device becomes "UL Listed."  The company can then put the UL mark on its product to show the certification.  As well, the company can sell the device in jurisdictions requiring the certification (nearly the entire US market has some type of schema requiring a NRTL, such as UL, certification).

29.     One such UL Standard is "UL 1017 STANDARD FOR SAFETY Vacuum Cleaners, Blower Cleaners, and Household Floor Finishing Machines."  According to UL listings, the product packaging, and labeling, all of the models in every series of the Vacuums are uniformly UL listed and marked, and thus tested under UL 1017.

### G.  "UL 1017 STANDARD FOR SAFETY Vacuum Cleaners, Blower Cleaners, And Household Floor Finishing Machines" Has Particular Safety Tests That Limit The Wattage And Amperage

30.     UL 1017 tests a vacuum being certified in numerous testing conditions that mimic the most extreme real-world operating scenarios.  For instance, UL 1017 5.2 tests vacuums in conditions of "[n]ormal load [which] shall be considered to be that load which approximates as closely as possible the most severe conditions of normal use but is not a deliberate overload."

31.     As well, UL 1017 5.7 dictates a "Rating" requirement which requires the "input current in amperes (and watts, if so marked) to the appliance shall not vary from the marked current (and wattage) rating by more than plus 10% and minus 15% when the equipment is operated under normal load[13] conditions."  This means that the highest power the device can ever draw, even in the "most severe conditions of normal use [that] is not a deliberate overload," has been tested and confirmed by the UL to be not more than 10% of the previously mentioned wattage and amperage Defendant permanently stamps all of its products with.[14]

---

[13] UL dictates the normal load conditions are the "most severe conditions of normal use but is not a deliberate overload."

[14] The starting current for an electric motor is also one of the highest draw scenarios.  UL 1017 5.6, in short, requires that "[a]n appliance shall start and operate normally on a circuit protected by an ordinary … fuse having a current rating corresponding to that of the branch circuit to which the appliance should be connected … and the fuse … shall not trip."  Because the Vacuums are all designed and marked to operate on 120V at less than 15 amps, even at start, the Vacuums cannot pull more 1800 watts (i.e., 120V times 15 amps), which is less than the 1865 watts even a 2.5 horsepower motor requires.

**H.  Defendant Intentionally Mislabeled The Vacuums With False And Misleading HP Claims**

32.     By permanently marking the Vacuums with the UL-verified wattages and amperages, and publishing the wattages and amperages in its brochures, Defendant knew that the HP Claims were false and misleading, yet nonetheless still advertised, labeled, and packaged the Vacuums with the exaggerated horsepower claims.

33.     The Vacuums do not, and will never be able to, meet the power requirements required for the Vacuums' advertised horsepower, as is demonstrated by:  (1) the inability for household circuits to provide the necessary power required to meet the HP Claims; (2) the inability for household receptacles to provide the necessary power required to meet the HP Claims; (3) Defendant's own wattages and amperages not meeting the power requirements necessary for the HP Claims; and (4) UL testing, certification, and marking demonstrating the maximum operating power of the device, under any conditions, does not meet the necessary power required to meet the HP Claims.

34.     Simply put, Defendant's horsepower claims are a farce.  It is physically impossible for any consumer to experience and use the claimed horsepower of the Vacuums during use, under any conditions.  The true horsepower rating is only a small fraction of what is depicted on Defendant's labeling and packaging.

**I.  The Disclaimer On The Vacuums' Packaging Does Not Does Not Preclude Consumer Deception**

35.     Starting in 2018 – at least **nine months** into the proposed class period – Defendant began including a purported disclaimer on the packaging of the Vacuums that states:

> "Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes.  It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial

contribution, achieved in laboratory testing.  In actual use, wet dry
vacuum motors do not operate the peak horsepower shown.

36.     However – as shown in the below exemplar – the purported disclaimer on the
Vacuums' packaging appears in exactly size 7 font, while the "5.0 Peak HP" representation
appears to be in approximately size 72 font.  Even worse, the purported disclaimer is buried on
the extreme bottom edge of the packaging's panel, and it is not in close proximity to the
challenged "Peak HP" claim that appears in the upper-left of the packaging:





37.     The obscurity of the purported disclaimer is compounded by the fact that the Vacuums' packaging is 18.9374 inches wide and 22.0625 inches high, or approximately 1.5 feet wide by 1.8 feet high (*i.e.*, 417.8 square inches).  By contrast, the disclaimer is less than an inch tall and 3.88 inches wide (*i.e.*, 1.45 square inches).  In other words, the disclaimer compromises just 0.3% of the product packaging by surface area.

38.     Furthermore, the disclaimer contain any capitalized letters, bold, or italics to draw the attention of a reasonable consumer.  Nor is there a border or otherwise to distinguish the disclaimer's block of text from the other fine print directly next to it.

39.     No reasonable consumer would expect that small print language on the lower panels of the Vacuums would contain language inconsistent with the Peak HP representations.  Given the placement, size, and lack of emphasis placed on the disclaimer – particularly in comparison to the HP Claim – a reasonable consumer would not be aware that the Vacuums could never produce the horsepower promised by the HP Claims, or that the HP Claims were altogether false and misleading.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to represent a class defined as all persons in the United States who purchased a Craftsman brand vacuum with a 1.75 or greater HP claim (the "Class").  Excluded from the Class are persons who made such purchase for the purpose of resale.

41.     Plaintiff Montgomery also seeks to represent a subclass of all Class members who purchased the Vacuums in Virginia (the "Virginia Subclass").

42.     Plaintiff Wood also seeks to represent a subclass of all Class members who purchased the Vacuums in New York (the "New York Subclass").

43.     Members of the Class, New York Subclass, and Virginia Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class, New York Subclass, and Virginia Subclass number in the tens or hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

44.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: whether the HP Claims are false or misleading; whether Defendant warranted the horsepower claim on the packaging and labeling; whether Defendant breached these warranties; and whether Defendant committed statutory and common law fraud by doing so.

45.     The claims of the named Plaintiffs are typical of the claims of the Class, New York Subclass, and Virginia Subclass in that the named Plaintiffs purchased a Craftsman vacuum in reliance on the representations and warranties described above, and suffered a loss as a result of those purchases.

46.     Plaintiffs are adequate representatives of the Class, New York Subclass, and Virginia Subclass because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

47.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class, New York Subclass, and Virginia Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
**(Breach Of Express Warranty)**

48.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

49.     Plaintiffs bring this claim individually and on behalf of the members of the Class, New York Subclass, and Virginia Subclass against Defendant.

50.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted in the HP Claims that the Vacuums output between "1.75 Peak HP" to "6.5 Peak HP."

51.     In fact, the Vacuums do not, and cannot, output the horsepower in the HP Claims.

52.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Class have been injured and harmed because:  (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b)

they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

53. On or about July 29, 2019, prior to filing this action, a pre-suit notice letter was served on Defendant which complies in all respects with U.C.C. § 2-607. Plaintiff Montgomery and the nationwide Class sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom. On October 10, 2019, Plaintiff Wood and the nationwide Class sent Defendant a substantially similar letter via overnight and certified mail, return receipt requested. A true and correct copy of Plaintiffs' letters are attached hereto as Exhibits A and B.

## COUNT II
### (Breach Of The Implied Warranty Of Merchantability)

54. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiffs bring this claim individually and on behalf of the members of the Class, New York Subclass, and Virginia Subclass against Defendant.

56. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, affixed HP Claims to each Vacuum and impliedly warranted that the Vacuums output "1.75 Peak HP" to "6.5 Peak HP."

57. Defendant breached the warranty implied in the contract for the sale of the Vacuums because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were

unfit for their intended and ordinary purpose because the Vacuums do not, and in fact, could never output the horsepower claimed during use by Class members as advertised.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

58.     Plaintiffs and Class members purchased the Vacuums in reliance upon Defendant's skill and judgment and the implied warranties.

59.     The Vacuums were not altered by Plaintiffs and Class members.

60.     The Vacuums were defective when they left the exclusive control of Defendant.

61.     Defendant knew that the Vacuums would be purchased and used without additional testing by Plaintiffs and Class members.

62.     The Vacuums were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

63.     As a direct and proximate cause of Defendant's breach of the implied warranty Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

## COUNT III
### (Unjust Enrichment)

64.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiffs bring this claim individually and on behalf of the members of the Class, New York Subclass, and Virginia Subclass against Defendant.

66.     Plaintiffs and Class members conferred benefits on Defendant by purchasing the Vacuums.

67.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the Vacuums.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented in the HP Claims that the Vacuums output between "1.75 Peak HP" to "6.5 Peak HP."  These misrepresentations caused injuries to Plaintiffs and Class members because they would not have purchased the Vacuums at all, or on the same terms, if the true facts were known.

68.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV
### (Negligent Misrepresentation)

69.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiffs bring this claim individually and on behalf of the members of the Class, New York Subclass, and Virginia Subclass against Defendant.

71.     As discussed above, Defendant misrepresented that the Vacuums output between "1.75 Peak HP" to "6.5 Peak HP" by virtue of the HP Claims.  Defendant had a duty to disclose the proper horsepower rating rather than misrepresented information.

72.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

73.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Vacuums, namely their true horsepower.

74.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Vacuums.

75.     Plaintiffs and Class members would not have purchased the Vacuums if the true facts about the HP Claims had been known.

76.     The negligent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
### (Fraud)

77.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiffs bring this claim individually and on behalf of the members of the Class, New York Subclass, and Virginia Subclass against Defendant.

79.     As discussed above, Defendant provided Plaintiffs and Class members with false and/or misleading material information and failed to disclose material facts about the Vacuums, including but not limited to the fact that they do not, and cannot, output the claimed "1.75 Peak HP" to "6.5 Peak HP."  These misrepresentations and omissions were made with knowledge of their falsehood.

80.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Vacuums.

81.     The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VI**
**(Violation Of The Virginia Consumer Protection Act, §§ 59.1-200, *et seq.*)**

82.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiff Montgomery brings this claim individually and on behalf of the proposed Virginia Subclass against Defendant.

84.     Defendant is a "supplier" as defined by VCPA § 59.1-198, in that Defendant is a seller, lessor, licensor, or professional who "advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases, or licenses good or services to be resold … in consumer transactions."

85.     The sale of the Vacuums to the Plaintiff Montgomery and the Virginia Subclass constitute "consumer transaction[s]" as defined by VCPA § 59.1-198, in that the Vacuums were "advertised, sold or offered for sale to the Plaintiff, to be used primarily for personal, family or household purposes."

86.     The subject transaction is regulated by the VCPA.

87.     Per VCPA § 59.1-200(5) Defendant "misrepresent[ed] that goods or services had certain quantities, characteristics, ingredients, uses, or benefits" by advertising the HP Claims when Defendant knew the HP Claims were false.

88.     Per VCPA § 59.1-200(6) Defendant "misrepresent[ed] that goods or services are of a particular standard, quality, grade, style, or model" by advertising the HP Claims when Defendant knew the HP Claims were false.

89.     Per VCPA § 59.1-200(8) Defendant "advertised goods or services with intent not to sell them as advertised" by selling the Vacuums while advertising a HP Claim and not selling the Vacuums with the true horsepower accurately stated.

90.     Per VCPA § 59.1-200(14) Defendant used "deception, fraud, false pretense, false promise, [and] misrepresentation in connection with a consumer transaction" by deceiving Plaintiff Montgomery and the Virginia Subclass with inaccurate HP Claims when Defendant knew that the HP Claims were false.  As such, Defendant's actions were willful and intentional and induced the purchases by Plaintiff Montgomery and the Virginia Subclass.

91.     Plaintiff Montgomery and the Virginia Subclass relied on the HP Claims and would not have purchased the Vacuums had they known the true horsepower output, or at least would not have purchased under the same terms.  Plaintiff Montgomery and the Virginia subclass would have purchased, or were diverted from, another competitor's vacuum because of the HP Claims.

92.     Plaintiff Montgomery and the Virginia Subclass relied upon these representations, and purchased the Vacuums based on the representations that the Vacuums had a particular horsepower as stated in the HP Claims.

93.     Plaintiff Montgomery and the Virginia subclass suffered an actual loss as a result of the purchase in that the value of the Vacuums purchased, with a lower horsepower than the false HP Claims, is substantially lower than the value of the Vacuums if the HP Claims were true.

94.     As a result of Defendant's violations, Plaintiff Montgomery and members of the Virginia Subclass have suffered damages because:  (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b) they paid a price

premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

95.     Because Plaintiff Montgomery suffered a loss as a result of Defendant's violation of the VCPA, Plaintiff Montgomery and the Virginia Subclass are entitled to recover all actual damages, including but not limited to (1) the difference in the value of the Vacuums as sold and vacuums with the true horsepower accurately stated; and (2) the entire amount of the sales transaction, and all other actual damages proven at trial times three, plus attorneys' fees and the cost of bringing this action.

96.     On behalf of himself and the Virginia Subclass, Plaintiff Montgomery seeks damages and/or rescission, equitable and/or injunctive relief, and also seeks equitable and declaratory relief, together with a reasonable counsel or attorneys' fees, and such other relief as the Court may deem necessary or appropriate to remedy these violations.

97.     Specifically, Plaintiff Montgomery seeks to recover, on behalf of himself and other members of the Virginia Subclass, his actual damages or $500, whichever is greater, as well as his reasonable attorneys' fees and court costs.  Since Defendant's violation of the VCPA was willful, Plaintiff Montgomery also seeks to recover, on behalf of himself and other members of the Virginia Subclass, three times his actual damages or $1,000, whichever is greater, as well as his attorneys' fees and court costs.

## COUNT VII
### (Violation Of New York's General Business Law § 349)

98.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

99.     Plaintiff Wood brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

100.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

101.    In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

102.    Plaintiff Wood and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

103.    By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Vacuums output a particular horsepower as stated on its HP claims.

104.    The foregoing deceptive acts and practices were directed at consumers.

105.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Craftsman Vacuums to induce consumers to purchase same.

106.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

107.    Defendant's action is the direct, foreseeable, and proximate cause of the damages that Plaintiff Wood and members of the New York Subclass have sustained from having paid for and used Defendant's products.

108.    As a result of Defendant's violations, Plaintiff Wood and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Vacuums

on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

109.     On behalf of himself and other members of the New York Subclass, Plaintiff Wood seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VIII
### (Violation Of New York's General Business Law § 350)

110.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

111.     Plaintiff Wood brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

112.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

113.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

114.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

115.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

116.    Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

117.    Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

118.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiff Wood and the New York Subclass have suffered and continue to suffer economic injury.

119.    As a result of Defendant's violations, Plaintiff Wood and members of the New York Subclass have suffered damages due to said violation because: (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

120.    On behalf of himself and other members of the New York Subclass, Plaintiff Wood seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class, the New York Subclass, and the Virginia Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Montgomery as a representative of the Class and Virginia Subclass and Plaintiff Wood as a representative of the Class and New York Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Class, New York Subclass, and Virginia Subclass members;

b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the nationwide Class, the New York Subclass, and the Virginia Subclass on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs, the Class, the New York Subclass, and the Virginia Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated:  October 18, 2021                   Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By:    */s/ Frederick J. Klorczyk III*
                                                     Frederick J. Klorczyk III

                                           Frederick J. Klorczyk III (*pro hac vice*)
                                           888 Seventh Avenue
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile:  (212) 989-9163
                                           E-Mail:  fklorczyk@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Neal J. Deckant (*pro hac vice*)
                                           1990 North California Blvd., Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
                                           Facsimile:  (925) 407-2700
                                           E-Mail:  ndeckant@bursor.com

                                           **REARDON SCANLON LLP**
                                           James J. Reardon, Jr. (CT 13802)

45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail:  james.reardon@reardonscanlon.com

*Attorneys for Plaintiffs*

**EXHIBIT A**

# BURSOR & FISHER
P.A.

1990 N. CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: 925.300.4455
Fax: 925.407.2700
fklorczyk@bursor.com

July 29, 2019

*<u>Via Certified Mail – Return Receipt Requested</u>*

Stanley Black & Decker, Inc.
1000 Stanley Drive
New Britain, Connecticut 06053

Re:   *Notice And Demand Letter Pursuant To U.C.C. §§ 2-313, 2-314, 2-607;*
       *The Connecticut Unfair Trade Practices Act ("CUTPA"); And*
       *The Virginia Consumer Protection Act ("VCPA")*

To Whom It May Concern:

        This letter serves as a preliminary notice and demand for corrective action by Stanley Black & Decker, Inc. ("Stanley Black & Decker") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our client, William Montgomery, and a class of all similarly situated purchasers (the "Class") of Craftsman-brand vacuums (collectively, the "Vacuums") claiming that the appliances can purportedly achieve "1.75 HP," "2.0 HP," "2.5 HP," "3.0 HP," "3.5 HP," "4.0 HP," "4.25 HP," "5.0 HP," "5.5 HP," "6.0 HP," or "6.5 HP" (collectively, the "HP Claims"). This letter also serves as a notice of violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA"); the Virginia Consumer Protection Act, §§ 59.1-200, *et seq.* ("VCPA"); and all other applicable federal and state laws.

        Our client purchased a "Craftsman 16-Gallon 5 HP Shop Vacuum," which was labeled as having "5 HP." However, it is physically impossible for any of the Vacuums to achieve a horsepower output anywhere close to Stanley Black & Decker's HP Claims. In fact, the true horsepower of the Vacuums is only a small fraction of the HP Claims. Accordingly, Stanley Black & Decker breached express and implied warranties made to our client and the Class and violated the consumer protection statutes reference above. *See also* U.C.C. §§ 2-313, 2-314.

        On behalf of our client and the Class, we hereby demand that Stanley Black & Decker immediately (1) issue a mandatory recall of the Vacuums, and (2) make full restitution to all purchasers of the Vacuums of all purchase money obtained from sales thereof.

        We also demand that Stanley Black & Decker preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the design, packaging, labeling, and manufacturing process for the Vacuums;

2.      All tests of the Vacuums, whether performed by Stanley Black & Decker or any third-party entities;

3.      All documents concerning the pricing, advertising, marketing, and/or sale of the Vacuums;

4.      All communications with customers involving complaints or comments concerning the Vacuums;

5.      All documents concerning communications with any retailer involved in the marketing or sale of the Vacuums;

6.      All documents concerning communications with federal or state regulators concerning the Vacuums; and

7.      All documents concerning the total revenue derived from sales of the Vacuums.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III

**EXHIBIT B**

# BURSOR & FISHER
P.A.

1990 N. CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: 925.300.4455
Fax: 925.407.2700
fklorczyk@bursor.com

October 10, 2019

**_Via Certified Mail – Return Receipt Requested_**

Stanley Black & Decker, Inc.
1000 Stanley Drive
New Britain, Connecticut 06053

Re:   *Notice And Demand Letter Pursuant To U.C.C. §§ 2-313, 2-314, 2-607;*
      *The Connecticut Unfair Trade Practices Act ("CUTPA"); And*
      *New York's General Business Law §§ 349-50 ("GBL")*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Stanley Black & Decker, Inc. ("Stanley Black & Decker") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our client, Donald Wood, and a class of all similarly situated purchasers (the "Class") of Craftsman-brand vacuums (collectively, the "Vacuums") claiming that the appliances can purportedly achieve "1.75 HP," "2.0 HP," "2.5 HP," "3.0 HP," "3.5 HP," "4.0 HP," "4.25 HP," "5.0 HP," "5.5 HP," "6.0 HP," or "6.5 HP" (collectively, the "HP Claims"). This letter also serves as a notice of violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA"); New York's General Business Law §§ 349-50; and all other applicable federal and state laws.

Our client purchased a "Craftsman XSP 12 Gallon Wet/Dry Vac," which was labeled as having "5.5 Peak  HP." However, it is physically impossible for any of the Vacuums to achieve a horsepower output anywhere close to Stanley Black & Decker's HP Claims. In fact, the true horsepower of the Vacuums is only a small fraction of the HP Claims. Accordingly, Stanley Black & Decker breached express and implied warranties made to our client and the Class and violated the consumer protection statutes reference above. *See also* U.C.C. §§ 2-313, 2-314.

On behalf of our client and the Class, we hereby demand that Stanley Black & Decker immediately (1) issue a mandatory recall of the Vacuums, and (2) make full restitution to all purchasers of the Vacuums of all purchase money obtained from sales thereof.

We also demand that Stanley Black & Decker preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

BURSOR&FISHER
P.A.

1.      All documents concerning the design, packaging, labeling, and manufacturing process for the Vacuums;

2.      All tests of the Vacuums, whether performed by Stanley Black & Decker or any third-party entities;

3.      All documents concerning the pricing, advertising, marketing, and/or sale of the Vacuums;

4.      All communications with customers involving complaints or comments concerning the Vacuums;

5.      All documents concerning communications with any retailer involved in the marketing or sale of the Vacuums;

6.      All documents concerning communications with federal or state regulators concerning the Vacuums; and

7.      All documents concerning the total revenue derived from sales of the Vacuums.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III

cc: All counsel of record (via e-mail)